UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION  MASTER FILE NO. 12-md-02311

_____

In re: Occupant Safety Systems  HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Direct Purchaser Actions  2:12-cv-00601
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant TRW Automotive Holdings Corporation's Motion to Dismiss All Consolidated Amended Complaints. (Doc. No. 74). Several months after Defendant filed the instant motion, it informed the Court via letter that it decided to withdraw its motion with respect to the Dealership Plaintiffs and the End-Payor Plaintiffs. Consequently, this motion relates only to Direct Purchaser Plaintiffs. The Court heard oral argument on the motion on June 4, 2014, and at the conclusion of the hearing took the matter under advisement. For the reasons stated below, the motion is **DENIED**.

**I.  STATEMENT OF FACTS**

Direct Purchaser Plaintiffs ("DPPs") filed a second consolidated amended class action complaint[1] alleging federal and state law claims against several Defendants including TRW Automotive Holdings Corporation ("TRW Automotive"). DPPs allege

---

[1] The Court notes that DPPs' motion to dismiss and TRW's response were filed prior to the filing of the Second Amended Consolidated Class Action Complaint. (Doc. No. 81). However, the parties stipulated to the amendment agreed that TRW may file a supplemental motion to dismiss or incorporate their previously filed motion. (Doc. No. 85). No supplemental brief was filed.

TRW Automotive engaged in a conspiracy to "rig bids for, and to fix, maintain, or stabilize the prices of Occupant Safety Systems sold in the United States" for which they seek damages and other appropriate equitable relief.  See (Case No. 12-601, Doc. No. 81 at ¶ 1).  Generally, TRW Automotive is in the business of manufacturing or selling Occupant Safety Systems ("OSS"), which are defined in DPPs' complaint as "seat belts, airbags, steering wheels or steering systems, safety electronic systems, and related parts and components" used in the manufacture of automobiles.  See (Id. at ¶¶ 8, 9).

TRW Automotive is a Delaware Corporation and maintains its principal place of business in Livonia, Michigan.  (Id. at ¶ 26).  It is the 100% owner of Defendant TRW Deutschland Holding GmBH ("TRW Deutschland"), a German corporation with its principal place of business in Koblenz, Germany.  (Id. at ¶ 27).  DPPs allege that "TRW Automotive – directly or through its subsidiaries, which it wholly-owned or controlled – manufactured, marketed, or sold [OSS] that were purchased in the United States . . . ." (Id. at ¶ 26).  TRW Deutschland is alleged to have sold OSS in the United States under the direction and control of TRW Automotive.  (Id. at ¶ 27).  In addition, DPPs allege that "all such entities within the corporate family were active, knowing participants in the conspiracy alleged herein" and that their conduct was "known to and approved by their respective corporate parent . . . ."  (Id. at ¶ 29).

In July of 2012, the Department of Justice ("DOJ") charged TRW Deutschland with participating in a "'combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize and maintain the prices of, seatbelts, airbags and steering wheels' in violation

2

of the Sherman Act." (Id. at ¶ 87). On September 25, 2012, TRW Deutschland pleaded guilty to its participation in the conspiracy and paid a $5.1 million fine. (Id. at ¶ 89). At or around the same time, "TRW Automotive Chairman and CEO John Plant stated that '[t]he actions connected with the DOJ settlement announced today conflict with what TRW stands for and are not consistent with our policies.'" (Id. at ¶ 90). He further stated, "'[o]nce we learned of the investigation, we moved very quickly to cooperate with the DOJ and bring this matter to a resolution.'" (Id.)

DPPs further allege that the market for OSS is conducive to anticompetitive conduct. Specifically, the market has high barriers to entry, has inelasticity of demand, is highly concentrated, and provides numerous opportunities to conspire. (Id. at ¶¶ 49, 55-59). TRW Automotive is alleged to control "20% of the global market share for [OSS]." (Id. at ¶ 50). Last, DPPs allege that TRW Automotive sells OSS products to "every significant automobile manufacturer in the United States . . . ." (Id. at ¶ 53).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).

When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### III.  ANALYSIS

TRW Automotive argues that it is named in the complaint solely because it is the parent company of another Defendant, TRW Deutschland. It asserts that even if DPPs properly alleged an overarching conspiracy among Defendants, it failed to articulate TRW Automotive's direct participation and role. Alternatively, it asserts that DPPs must plead facts that establish an alter-ego relationship between it and TRW Deutschland, which DPPs failed to do. However, the Court finds that DPPs properly alleged TRW Automotive's direct participation in the conspiracy, and thus does not address whether DPPs properly pleaded an alter-ego relationship between the two Defendants.

In the complaint, DPPs allege that "TRW Automotive – *directly* or through its subsidiaries, which it wholly-owned or controlled – manufactured, marketed, or sold [OSS] that were purchased in the United States." (Doc. No. 81 at ¶ 26) (emphasis added). The complaint further alleges that TRW Automotive directly participated in

meetings and submitted rigged bids in furtherance of the conspiracy. (Id. at ¶¶ 62-64). Thus, DPPs advance allegations arising out of TRW Automotive's direct participation in the conspiracy, independent of the actions of TRW Deutschland. Although TRW Automotive challenges the veracity of paragraph 26, the Court must credit DPPs' allegations at this stage. See Twombly, 550 U.S. at 570 (stating that the court must "accept all factual allegations as true").

In addition, DPPs' allegations support the existence of a global conspiracy, which bolsters DPPs' allegation that TRW Automotive directly participated in price-fixing OSS in the United States. TRW Automotive allegedly conspired with Autoliv, Inc., Takata Corp., and Tokai Rika Co., Ltd., all of whom have pleaded guilty to participating in the alleged conspiracy with respect to OSS or another part in this multi-district litigation. After one of TRW Automotive's subsidiaries also pleaded guilty, John Plant, the Chairman and CEO of TRW Automotive, stated, "[o]nce we learned of the investigation [into TRW Deutschland's conduct], we moved very quickly to cooperate with the DOJ and bring this matter to a resolution." (Id. at ¶ 90). In fact, the DOJ noted that the conspiracy was "carried out within the United States." (Doc. No. 76 at 12 n.6). Moreover, DPPs sufficiently allege that the global OSS market was conducive to anticompetitive conduct.

Taken together, the allegations demonstrate that it is plausible that TRW Automotive knowingly and directly participated in the alleged conspiracy to price-fix OSS. See Twombly, 550 U.S. at 570. Given the widespread anticompetitive conduct by companies in the OSS market with which TRW Automotive is alleged to compete, an inference that TRW Automotive directly participated in the conspiracy arises. Not only

did it publicly address the conduct of its subsidiary TRW Deutschland, it cooperated with the DOJ investigation, and it stated that its subsidiary's actions "are not consistent with *our* policies." (Doc. No. 81 at ¶ 90) (emphasis added). Although TRW Automotive is not mentioned in the plea agreement between TRW Deutschland and the DOJ, this does not operate to absolve TRW Automotive of liability. DPPs are not constrained by the information uncovered in governmental investigations and plea agreements. See In re Packaged Ice Antitrust Litig., 723 F. Supp. 2d 987, 1012 (noting "there are a multitude of reasons why the government in a criminal investigation may limit or curtail its investigation").

In sum, DPPs alleged (1) TRW Automotive directly sold, manufactured, or marketed OSS; (2) all of TRW Automotive's alleged co-conspirators, including one of its own subsidiaries, pleaded guilty to anticompetitive conduct; (3) the global OSS market, of which TRW Automotive and its alleged conspirators control 75% of sales, was ripe for such an illegal conspiratorial agreement; and (4) TRW Automotive is located in the United States, where the alleged anticompetitive conduct is alleged to have taken place. Consequently, it is plausible that TRW Automotive directly participated in a conspiracy aimed at the United States to price-fix OSS. See In re Packaged Ice Antitrust Litig., 723 F. Supp. 2d at 1008 (finding government investigations and guilty pleas of the defendants and their respective executives sufficient to support the plausibility of a conspiracy). DPPs have met their pleading burden.

### IV.   CONCLUSION

Accordingly, Defendant's motion is **DENIED**.

6

**IT IS SO ORDERED.**

Date: August 29, 2014          s/Marianne O. Battani
                                           MARIANNE O. BATTANI
                                           United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 29, 2014.

                                                           s/ Kay Doaks
                                                           Case Manager