## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | CASE NO. 12-MD-02311 HON. MARIANNE O. BATTANI |
| In Re: OCCUPANT SAFETY SYSTEMS CASES | |
| THIS RELATES TO: ALL DIRECT PURCHASER ACTIONS | 2:12-cv-00601-MOB-MKM |

### DIRECT PURCHASER PLAINTIFFS'
### MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT
### WITH AUTOLIV DEFENDANTS AND REQUEST TO UTILIZE PART
### OF THE SETTLEMENT FUND TO PAY FOR LITIGATION EXPENSES

Direct Purchaser Plaintiffs hereby move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlement with Defendants Autoliv Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Autoliv Safety Technology, Inc. and Autoliv Japan Ltd. (collectively, "Autoliv"), and, subject to Paragraph 15 of the Settlement Agreement, for authorization to utilize up to $1 million from the Settlement Fund to pay for litigation expenses. In support of this motion, Direct Purchaser Plaintiffs rely upon the accompanying memorandum of law, which is incorporated by reference herein.

DATED: October 17, 2014                    Respectfully submitted,

_/s/ David H. Fink_____
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500
Interim Liaison Counsel for the Direct Purchaser
Plaintiffs

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON
  & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
Craig W. Hillwig
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
  & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **CASE NO. 12-MD-02311**<br>**HON. MARIANNE O. BATTANI** |
| **In Re: OCCUPANT SAFETY SYSTEMS CASES** | |
| **THIS RELATES TO:**<br>**ALL DIRECT PURCHASER ACTIONS** | **2:12-cv-00601-MOB-MKM** |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT**
**WITH AUTOLIV DEFENDANTS AND REQUEST TO UTILIZE PART**
**OF THE SETTLEMENT FUND TO PAY FOR LITIGATION EXPENSES**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

STATEMENT OF THE ISSUES PRESENTED ........................................................................ iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................................................. iv

INTRODUCTION ............................................................................................................... 1

I.     BACKGROUND ........................................................................................................ 1

II.    SETTLEMENT TERMS ............................................................................................. 4

III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
ADEQUATE AND SHOULD BE APPROVED BY THE COURT .............................. 6

   A.    The Governing Standards for Final Approval ......................................... 6

   B.    The Proposed Settlement With Autoliv is Fair, Reasonable and Adequate ............. 8

      1.   The Likelihood of Direct Purchaser Plaintiffs' Success on the
Merits Weighed Against the Amount and Form of the Relief
Offered in the Settlement Supports Approval .......................................... 9

2.    The Complexity, Expense, and Likely Duration of
Continued Litigation Favor Approval.................................................................... 11

3.    The Judgment of Experienced Counsel Who Have Competently
Evaluated the Strength of the Claims and the Amount and
Character of the Discovery and Evidence Supports Approval ............................... 12

4.    The Reaction of Class Members ............................................................................. 13

5.    The Settlement Agreement is the Product of Arm's-Length Negotiations.............. 13

6.    The Settlement is Consistent With the Public Interest............................................. 14

IV.     NOTICE WAS PROPER UNDER RULE 23 AND DUE PROCESS .......................... 14

V.     ALLOWING CLASS COUNSEL TO USE UP TO $1 MILLION FROM
THE SETTLEMENT FUND FOR EXPENSES IS APPROPRIATE ......................... 15

VI.     CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT
CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED
SETTLEMENT IS APPROPRIATE ............................................................................ 17

A.    The Proposed Direct Purchaser Settlement Class Satisfies Rule 23(a) ................... 18

1.    The Settlement Class is Sufficiently Numerous ..................................................... 18

2.    Common Questions of Law and Fact Exist ............................................................. 19

3.    Direct Purchaser Plaintiffs' Claims are Typical of Those of the Settlement Class .. 20

4.    Direct Purchaser Plaintiffs Will Fairly and Adequately Protect
the Interests of the Class ......................................................................................... 20

B.    Direct Purchaser Plaintiffs' Claims Satisfy the Prerequisites of
Rule 23(b)(3) for Settlement Purposes ................................................................... 21

1.    Common Legal and Factual Questions Predominate............................................... 22

2.    A Class Action is Superior to Other Methods of Adjudication. ............................. 23

VII.     CONCLUSION............................................................................................................. 24

## STATEMENT OF THE ISSUES PRESENTED

1.   Whether the proposed settlement between the Direct Purchaser Plaintiff Settlement Class (the "Settlement Class") and Defendants Autoliv Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Autoliv Safety Technology, Inc., and Autoliv Japan Ltd. (collectively, "Autoliv"), as set forth in the Settlement Agreement between the Settlement Class and Autoliv, is fair, reasonable and adequate, and whether the Court should approve the settlement under Fed.R.Civ.P. 23.

2.   Whether the Court should certify the Settlement Class for purposes of the settlement only.

3.   Whether the Court should approve Settlement Class Counsel's request to use up to $1.0 million from the Settlement Fund to pay for litigation expenses.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)

*Griffin v. Flagstar Bancorp, Inc.,*
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
    No. 09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998)

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007)

# <u>INDEX OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 17

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007) .......................................................... 22

*Carson v. Am. Brands, Inc.,* 450 U.S. 79 (1981) ........................................................................ 7

*Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981
    (E.D. Mich. Jul. 31, 2013) .......................................................................................... 12, 18, 20

*Dick v. Sprint Commc'ns ,* 297 F.R.D. 283 (W.D. Ky. 2014) .................................................. 5, 6

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*,
    2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ...................................................................... 19

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ............................................................................. 6

Grenada Invs., Inc. v. DWG Corp., 962 F.2d 1203 (6th Cir.1992) ........................................ 8, 14

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10–cv–10610,
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ............................................................. passim

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009) ........................................ 21

*In re Am. Med. Sys., Inc.,* 75 F.3d 1069 (6th Cir. 1996) ............................................................. 19

*In re Auto. Refinishing Paint Antitrust Litig.*, 617 F.Supp.2d. 336 (E.D.Pa.2007) ...................... 5

*In re Automotive Parts Antitrust Litig.,* 2:12-md-02311,
    2014 WL 4272774 (E.D. Mich. Aug. 29, 2014) ........................................................................ 2

*In re Automotive Parts Antitrust Litig.,* 2:12-md-02311,
    2014 WL 4272784 (E.D. Mich. Aug. 29, 2014) ........................................................................ 2

*In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426,
    2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ........................................................................... 7

*In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297 (E.D. Mich. 2007) ...................................... 23

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003) .............................. passim

*In re Chocolate Confectionary Antitrust Litig.*, No. 1:08–MDL–1935,
    2011 WL 6981200 (M.D. Pa. Dec. 12, 2011) ......................................................................... 17

*In re Corrugated Container Antitrust Litig.,* 556 F. Supp. 1117 (S.D. Tex. 1982) ...................... 16

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
No. 3:08–MD01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010)........................................ 5

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) .............. 12

*In re Flat Glass Antitrust Litig.*, 191 F.R.D 472 (W.D. Pa. 1999) ......................................... 19, 20

*In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012).................................................... 24

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y.2004) ............................ 13

*In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136 (E.D. Pa. 2013)............................. 14

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003).................................. 4, 10

*In re M.D.C. Holdings Sec. Litig.*, No. 89-0090,
1990 WL 454747 (S.D. Cal., Aug. 30, 1990) ......................................................................... 16

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y 1996)....................... 24

*In re Packaged Ice* Antitrust *Litig.*, No. 08-MD-01952,
2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .................................................................... 8, 12

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952,
2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ................................................................. passim

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) .............................................................................. 10, 17

*In re Prudential Ins. Co. of America Sales Practices Litig.*,
177 F.R.D. 216 (D.N.J. 1997)............................................................................................. 14

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)............................................ 21, 22

*In re Southeastern Milk Antitrust Litig.*, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010)............. 22

*In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................... 8, 11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ..................................................................................... 18, 19, 20

*In re WorldCom, Inc. Sec. Litig.,* 02 CIV 3288(DLC),
2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004)...................................................................... 17

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.
v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ......... passim

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) .................................. 7, 9

*Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007 (E.D. Mich. 2005) ...................................... 6

*Marsden v. Select Medical Corp.*, 246 F.R.D. 480 (E.D. Pa. 2007) ............................................... 18

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) ............................................. 14

*New England Health Care Employees Pension Fund v.*
   *Fruit of the Loom, Inc.*, 234 F.R.D. 627 (W.D. Ky. 2006) ......................................................... 7

*Newby v. Enron Corp.,* 394 F.3d 296 (5th Cir. 2004) .................................................................... 17

*Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601 (E.D. Wisc. 2000) .............................. 23

*Senter v. Gen. Motors Corp.,* 532 F.2d 511 (6th Cir. 1976) .......................................................... 20

*Sheick v. Auto. Component Carrier LLC,* No. 2:09–cv–14429,
   2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) .................................................................. passim

*Sheick v. Automotive Component Carrier LLC,*
   2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ...................................................................... 20

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ................................... 18, 19, 20

*Sullivan v. DB Investments, Inc.,* 667 F.3d 273 (3d Cir. 2011) ..................................................... 7

*Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262 (E.D. Ky. 2009) .............................. 18

*UAW v. General Motors Corp.,* 497 F.3d 615 (6th Cir. 2007) ................................................. passim

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir.1983) ............................................................. 6, 11, 12

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................................ 18

Fed. R. Civ. P. 23(a)(1) ................................................................................................................... 18

Fed. R. Civ. P. 23(a)(3) ................................................................................................................... 20

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................. 14

Fed. R. Civ. P. 23(e)(1) ................................................................................................................... 14

Fed.R.Civ.P. 23(e)(2) ........................................................................................................................ 8

**Treatises**

4 *NEWBERG ON CLASS ACTIONS* (3d ed. 1992) ...................................................................... 19

*Manual for Complex Litigation, Fourth* §13.21 (2004)................................................................ 16

## INTRODUCTION

Plaintiffs Beam's Industries, Inc. and Findlay Industries, Inc., on behalf of a proposed Settlement Class of direct purchasers of Occupant Safety Systems in the United States, submit this Memorandum in support of their motion for final approval of the proposed settlement with the Autoliv defendants. Under the terms of the settlement, Autoliv will pay $40 million (the "Settlement Fund") and provide substantial cooperation to assist Direct Purchaser Plaintiffs in the prosecution of the claims against the remaining Defendants.

For the reasons set forth herein, Direct Purchaser Plaintiffs respectfully submit that the proposed settlement is fair, reasonable and adequate, and should be approved by the Court. Settlement Class Counsel also request that the Court approve their request to use up to $1 million from the Settlement Fund proceeds to pay for litigation expenses. Submitted herewith is a proposed Order and Final Judgment in the form agreed to by Direct Purchaser Plaintiffs and Autoliv (Exhibit 1), and a proposed order granting the litigation expense request (Exhibit 2).

## I.   BACKGROUND

In 2012, class action lawsuits were filed against the Defendants by Plaintiffs on behalf of a class of direct purchasers of "Occupant Safety Systems."[1] On August 7, 2012, the Court appointed the undersigned law firms Interim Lead and Liaison Counsel for the Direct Purchaser Plaintiffs. (2:12-md-02311, Doc. No. 271). The Direct Purchaser Plaintiffs' actions were consolidated and coordinated for pretrial purposes on January 15, 2013. (2:12-cv-00600, Doc. No. 64).

Direct Purchaser Plaintiffs filed a Consolidated Amended Class Action Complaint "Consolidated Amended Complaint") on July 3, 2013 (2:12-cv-00601, Doc. No. 65), and a Second Consolidated Amended Class Action Complaint ("Second Consolidated Amended Complaint") on

---

[1] "Occupant Safety Systems," for purposes of the settlement, are seat belts, airbags, steering wheels or steering systems, safety electronic systems, and related parts and components.

February 28, 2014. (2:12-cv-00601, Doc. No. 81). Direct Purchaser Plaintiffs allege that Defendants entered into a conspiracy to suppress and eliminate competition for Occupant Safety Systems by agreeing to fix, maintain, or stabilize prices, rig bids, and allocate the supply of Occupant Safety Systems, in violation of federal antitrust laws. Direct Purchaser Plaintiffs further allege that as a result of the conspiracy, they and other direct purchasers of Occupant Safety Systems were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct, and they seek recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

On October 21, 2013, Defendants filed Rule 12(b)(6) motions to dismiss Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint[2], including a collective Defendants' motion (2:12-cv-00601, Doc. No. 75) and a separate motion by Defendant TRW Automotive Holdings Corporation ("TRW Automotive"). (2:12-cv-00601, Doc. No. 74). The Court denied both motions on August 29, 2014. *In re Automotive Parts Antitrust Litig.,* 2:12-md-02311, 2014 WL 4272784 (E.D. Mich. Aug. 29, 2014) and *In re Automotive Parts Antitrust Litig.,* 2:12-md-02311, 2014 WL 4272774 (E.D. Mich. Aug. 29, 2014).

Following protracted settlement negotiations that took place via correspondence, telephone and in-person meetings, Direct Purchaser Plaintiffs reached a settlement with Autoliv, which is memorialized in an agreement dated May 30, 2014. (2:12-cv-00601, Doc. No. 94-2) (hereinafter, the "Settlement Agreement").

---

[2] Direct Purchaser Plaintiffs filed their Second Consolidated Amended Complaint in order to extend the Class Period and to reflect guilty pleas and criminal informations that were filed subsequent to the filing of the Consolidated Amended Complaint. The parties stipulated that Defendants could supplement their motions or merely reincorporate their previously-filed motions. Defendants did not file any supplemental pleadings.

On July 9, 2014, this Court preliminarily approved the proposed Autoliv settlement and authorized dissemination of notice to the Settlement Class, which the Court provisionally certified for purposes of the proposed settlement only, and defined as follows:

> All individuals and entities who purchased Occupant Safety Systems in the United States directly from one or more Defendants or any of the Defendants' respective parents, subsidiaries, or affiliates from January 1, 2003 through May 30, 2014.

(2:12-cv-00601, Doc. No. 97 at ¶ 4) (hereinafter, the "Preliminary Approval Order").[3]

Pursuant to the Preliminary Approval Order, on August 29, 2014, 1,212 copies of the Notice of Proposed Settlement of Direct Purchaser Class Action with Autoliv Defendants and Hearing on Settlement Approval ("Notice") were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants. Further, a Summary Notice of Proposed Settlement of Direct Purchaser Class Action with Autoliv Defendants and Hearing on Settlement Approval ("Summary Notice") was published in one edition of *Automotive News*, and in the national edition of *The Wall Street Journal,* on August 25, 2014. In addition, copies of the Notice were (and remain) posted on-line at www.autopartsantitrustlitigation.com.[4]

The deadline for submission of objections to the proposed settlement or requests for exclusion from the Settlement Class is October 30, 2014. To date, there have been no objections to the proposed settlement or requests for exclusion.

---

[3] For purposes of the Settlement Class definition, "Defendants" are: Autoliv Inc.; Autoliv ASP, Inc.; Autoliv B.V. & Co. KG; Autoliv Safety Technology, Inc.; Autoliv Japan Ltd.; Takata Corporation; TK Holdings, Inc.; Tokai Rika Co., Ltd.; TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc.; TRW Automotive Holdings Corporation; and TRW Deutschland Holding GmbH.

[4] Autoliv's counsel have informed Settlement Class Counsel that Autoliv fulfilled its obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005"), by disseminating the requisite notice to the appropriate federal and state officials on June 13 and June 20, 2014.

## II.   SETTLEMENT TERMS

Autoliv is paying $40 million in cash. This amount has been deposited into an interest bearing escrow account in accordance with the provisions of the Settlement Agreement (¶ 7), and these funds have been accruing interest for the benefit of the Settlement Class.[5]

In addition to the cash payment, the proposed settlement requires Autoliv to provide Direct Purchaser Plaintiffs with extensive cooperation in the continued prosecution of the claims against the remaining Defendants, by providing, *inter alia*, documents, English translations, transactional data, interviews, depositions, and trial testimony of current and former employees, representatives or agents of Autoliv, as well as meetings with Autoliv's outside counsel during which they will provide information relevant to the claims in this litigation. Settlement Agreement at ¶ 21. As stated in *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003), such cooperation provisions provide a "substantial benefit" to the class and "strongly militates toward approval of the Settlement Agreement." This cooperation will enhance and strengthen Direct Purchaser Plaintiffs' prosecution of claims against the remaining Defendants.

In exchange for the settlement payment and cooperation, the proposed settlement provides, *inter alia,* for the release by Direct Purchaser Plaintiffs, the other members of the Settlement Class, and the other "Releasing Parties," of "Released Claims" against Autoliv, and the other "Released Parties" (as defined in the Settlement Agreement). The Released Claims are related to antitrust and similar claims arising from the conduct alleged in the complaints. Settlement Agreement at ¶¶ 17-18.

---

[5] The Settlement Agreement provides that the Settlement Fund may be reduced in the event that the total dollar amount of sales of Occupant Safety Systems by Autoliv during the Class Period to direct purchasers who timely exercise their right to request exclusion from the Settlement Class exceeds certain percentages. Further, the settlement gives both Autoliv and the plaintiffs the right to withdraw from the settlement if the total dollar amount of sales of Occupant Safety Systems by Autoliv during the Class Period to direct purchasers who timely exercise their right to request exclusion from the Settlement Class exceeds a certain percentage. Settlement Agreement at ¶ 8. These percentages are set forth in a confidential side letter that will be provided to the Court for *in camera* review upon request.

The releases specifically exclude claims based upon indirect purchases of Occupant Safety Systems; claims based on negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defects, breach of product warranty, or breach of contract claims relating to Occupant Safety Systems; claims brought outside the United States relating to purchases of Occupant Safety Systems outside the United States; claims brought under laws other than those of the United States; and claims concerning any automotive part other than Occupant Safety Systems. *Id.* at ¶ 17.

Moreover, Autoliv's sales to the Settlement Class remain in the case as a potential basis for joint and several liability and damages against other current or future defendants in the litigation. *Id.* at ¶ 23.

Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns ,* 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Auto. Refinishing Paint Antitrust Litig.*, 617 F.Supp.2d. 336, 341 (E.D.Pa.2007).

The Autoliv Settlement Agreement was entered into only after extensive arm's-length negotiations between experienced and sophisticated counsel. During the negotiations, the merits of the respective parties' positions were thoroughly discussed and evaluated. As part of the settlement negotiations, the parties had extensive meetings and numerous telephone conferences, and Settlement Class Counsel analyzed relevant industry data and other pertinent facts. The settlement negotiations were protracted and hard-fought, lasting well over a year and included six days of

meetings in New York City, Washington, D.C., and Detroit. The settlement with Autoliv is the result of these extensive good faith negotiations, after factual investigation and legal analysis by experienced counsel, and is based upon the attorneys' full understanding of the strengths and weaknesses of the case.

### III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

#### A.   The Governing Standards for Final Approval

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10–cv–10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011). *Accord UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions).

A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921–23 (6th Cir.1983)). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick v. Auto. Component Carrier LLC*, No. 2:09–cv–14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

A court has broad discretion in deciding whether to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d at 636; *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts give considerable weight and deference to the views of experienced counsel as to the merits of an arm's-length settlement. *Dick*, 297 F.R.D. at 297 ("The Court defers to

the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation"). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted); *accord In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006), nor to "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981). In light of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick,* 2010 WL 4136958, at *15 (citation omitted). Moreover, a district court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) ("Ford") (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

Because the proposed settlement was negotiated at arm's-length by experienced counsel knowledgeable about the facts and the law and is fair, reasonable, and adequate, Direct Purchaser Plaintiffs respectfully submit that it merits final approval.

**B.  The Proposed Settlement With Autoliv is Fair, Reasonable and Adequate**

Under Fed.R.Civ.P. 23(e)(2), "[t]o warrant district court approval, a class action settlement must be fair, reasonable, and adequate." *Sheick*, 2010 WL 4136958, at *14. *Accord  Packaged Ice*, 2011 WL 717519, at *8. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Vukovich*, 720 F.2d at 921); *In re Packaged Ice* Antitrust *Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

Courts in the Sixth Circuit have identified a number of related factors relevant in determining whether a settlement is fair, reasonable and adequate: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8. *Accord UAW v. Gen. Motors Corp.,* 497 F.3d at 631; *Griffin*, 2013 WL 6511860, at *3; *Cardizem*, 218 F.R.D. 508 at 522.  No single factor is dispositive. When evaluating the fairness of a settlement, the court may weigh each factor based on the circumstances of the case, *Ford*, 2006 WL 1984363, at *21, and may "choose to consider only those factors that are relevant to the settlement at hand. *Id.* at *22. *See also Grenada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205–06 (6th Cir.1992) (district court enjoys wide discretion in assessing the weight and applicability of factors). As discussed more fully below, the Autoliv settlement is fair, reasonable and adequate under the relevant criteria, and warrants approval under Rule 23(e)(2).

1.  **The Likelihood of Direct Purchaser Plaintiffs' Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval**

When considering the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick,* 2010 WL 4136958, at *15 (quoting *IUE-CWA,* 238 F.R.D. at 594); *Ford*, 2006 WL 1984363, at *21.

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. In assessing the parties' dispute and weighing the likelihood of plaintiffs' success on the merits if the litigation continues against the benefits of the settlement, the ultimate question for the court is only whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued. *Sheick,* 2010 WL 4136958, at *16 (citing *IUE–CWA*, 238 F.R.D. at 595).

Plaintiffs are optimistic about the likelihood of ultimate success in this matter, but acknowledge that a successful resolution is not guaranteed. Autoliv has pleaded guilty to committing antitrust violations, but only during the period March 2006 to February 2011, which is a shorter conspiracy period than that alleged in the Second Consolidated Amended Complaint. Further, Direct Purchaser Plaintiffs believe that Autoliv, which is represented by highly experienced and competent counsel, was prepared to defend this case through trial and appeal, if necessary. Litigation risk is inherent in any litigation, and this is particularly true with respect to class actions. So, while they are optimistic about the outcome of this litigation, Direct Purchaser Plaintiffs must acknowledge the risk that Autoliv could prevail with respect to certain legal or factual issues, which could result in reducing or eliminating any potential recovery.

These risks must be weighed against the settlement consideration: $40 million in cash (nearly three times the amount of Autoliv's $14.5 million criminal fine) and extensive cooperation by Autoliv, which is valuable to the Settlement Class members as they continue to litigate against the remaining defendants Takata Corporation, TK Holdings, Inc., Tokai Rika Co., Ltd., TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc., TRW Automotive Holdings Corporation, and TRW Deutschland Holding GmbH.

The Autoliv settlement is also valuable as an "ice-breaker" settlement in this multi-defendant litigation. *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *10. As the court stated in *Linerboard,* "this settlement has significant value as an "ice-breaker" settlement -- it is the first settlement in the litigation -- and should increase the likelihood of future settlements. An early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations." 292 F.Supp.2d at 643.

Another important aspect of the settlement is the extensive cooperation that Autoliv has agreed to provide, which is a "substantial benefit" to the class and "strongly militates toward approval of the Settlement Agreement." *Linerboard*, 292 F. Supp. 2d at 643. *Accord Packaged Ice*, 2011 WL 717519, at *10 (noting that cooperation by the settling defendant "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants."); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment."). The cooperation to be provided by Autoliv under the Settlement Agreement provides just such a substantial benefit to the Settlement Class.[6]

---

[6] In accordance with the paragraph 21 of the Settlement Agreement, Autoliv began providing information to the Direct Purchaser Plaintiffs after the settlement was preliminarily approved.

Settlement Class Counsel believe that the proposed settlement represents an excellent recovery for the Settlement Class. Weighing the settlement's benefits against the risks of continued litigation tilts the scale heavily toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

### 2. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (quoting *Vukovich,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with class actions, which are "inherently complex."). S*ee also Cardizem*, 218 F.R.D. at 533 ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex….").

Direct Purchaser Plaintiffs are still litigating with the remaining Defendants, so it is not appropriate to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation because of the chance that those Defendants would seek to use any such disclosures against Direct Purchaser Plaintiffs going forward. Settlement Class Counsel believe that at this point it is sufficient to state that complex antitrust litigation of this scope has certain inherent risks that the settlement at least partially negates.

The proposed settlement eliminates the risks, expense and delay with respect to a recovery from Autoliv, ensures a substantial payment to the Settlement Class, and provides the Settlement Class with cooperation that will be used to pursue the claims against the remaining Defendants. This factor also supports final approval of the proposed settlement.

11

### 3. The Judgment of Experienced Counsel Who Have Competently Evaluated the Strength of the Claims and the Amount and Character of the Discovery and Evidence Supports Approval

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18). "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the Direct Purchaser Plaintiffs from the inception of the *Automotive Parts Antitrust Litigation*, and negotiated this settlement at arm's-length with well-respected and experienced counsel for Autoliv. Settlement Class Counsel believe the proposed settlement constitutes an excellent result.

Although certain discovery has been stayed by the Court at the request of the Department of Justice, ample evidence and information about the Occupant Safety Systems conspiracy was disclosed in connection with the related criminal litigation, obtained through Settlement Class Counsel's investigation, and relevant industry data and other pertinent facts were provided by Autoliv as part of the settlement negotiation process.[7]   In addition to their own investigation,

---

[7] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6. The "question is whether the parties had adequate information about

Settlement Class Counsel have analyzed criminal informations and plea agreements relating to Autoliv, Inc., TRW Deutschland Holding GmbH, Takata Corporation, and several of these Defendants' executives, among other criminal case materials. The information from these sources allowed Settlement Class Counsel to evaluate the strengths and weaknesses not only of the legal case, but also the potential value of the promised cooperation. Based on this information, Settlement Class Counsel believe that the Autoliv settlement is fair, reasonable, and in the best interests of the Settlement Class, and their opinion supports final approval of the settlement.

### 4.   The Reaction of Class Members

To date there have been no objections to the proposed settlements or requests for exclusion. However, the reaction of Settlement Class members cannot be fully gauged at this time, because the deadline for objections and opt-out requests has not yet passed. Settlement Class Counsel will submit to the Court an updated report on objections or opt-outs, if any, after the October 30, 2014 deadline, and prior to the Fairness Hearing scheduled for December 3, 2014.

### 5.   The Settlement Agreement is the Product of Arm's-Length Negotiations

Unless rebutted by evidence to the contrary, there is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick,* 2010 WL 4136958, at *19-20. Settlement Class Counsel have extensive experience litigating class action antitrust and other complex cases, and they negotiated at all times at arm's-length with Autoliv's counsel. Consideration of this factor fully supports final approval of the settlement as well.

---

their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.2004)).

### 6.   The Settlement is Consistent With the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Grenada*, 962 F.2d at 1205). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed settlement. *Griffin*, 2013 WL 6511860, at *5. This factor also supports approval.

Consideration of all the above factors supports final approval of the proposed Autoliv settlement.

## IV.   NOTICE WAS PROPER UNDER RULE 23 AND DUE PROCESS

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)); *In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (E.D. Pa. 2013) (quoting *In re Prudential Ins. Co. of America Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997)).

For class actions certified under Rule 23(b)(3), the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, the notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and

manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.*[8]

Pursuant to the Preliminary Approval Order, on August 29, 2014, 1,212 copies of the Notice were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants. The Summary Notice was published in one edition of *Automotive News*, and in the national edition of *The Wall Street Journal,* on August 25, 2014. In addition, copies of the Notice and Summary Notice were posted on-line at www.autopartsantitrustlitigation.com.[9]

The notice program comports in all respects with the requirements of Rule 23 and due process. *See* Preliminary Approval Order at ¶ 9; *Packaged Ice*, 2011 WL 717519, at \*5; *Sheick*, 2010 WL 4136958 at \*15.

## V.   ALLOWING CLASS COUNSEL TO USE UP TO $1 MILLION FROM THE SETTLEMENT FUND FOR EXPENSES IS APPROPRIATE

Settlement Class Counsel are not presently seeking an award of attorneys' fees from the Settlement Fund. In view of the ongoing litigation against the remaining Defendants, however, Settlement Class Counsel request that they be permitted to use a portion of the Settlement Fund to pay expenses in the Occupant Safety Systems litigation.[10]

---

[8] Direct Purchaser Plaintiffs are not at this stage proposing a plan of allocation and distribution of the Autoliv settlement funds if the settlement is approved. Direct Purchaser Plaintiffs will propose an allocation plan at a future date, including the dissemination of additional notice and a proof of claim form to the Settlement Class members concerning allocation and distribution. Settlement Class Counsel also are not making a request for an award of attorneys' fees at this time. The Notice informs Settlement Class members that Settlement Class Counsel will at a later time, pursuant to an additional notice and opportunity for Class members to object, seek an award of attorneys' fees and reimbursement of litigation expenses. The Notice also informs Class members that Settlement Class Counsel are seeking authorization from the Court to utilize up to $1 million from the Settlement Fund for expenses incurred prosecuting the claims in this litigation.

[9] Consistent with paragraph 17 of the Preliminary Approval Order, a Declaration or Affidavit confirming that notice to the Settlement Class was disseminated in accordance with the Preliminary Approval Order will be filed at least 10 days prior to the Fairness Hearing.

[10] Any payment of litigation expenses would be done in compliance with the express terms of the Settlement Agreement. *See* Settlement Agreement at ¶ 15.

The Notice expressly informs members of the Settlement Class that Settlement Class Counsel will request that they be permitted to use up to $1.0 million from the Settlement Fund to pay litigation expenses, including, but not limited to, those incurred for economic experts, depositions, and document reproduction and review. *See* Notice, attached as Exhibit "A" to the Preliminary Approval Order, at pp. 2, 7-10. (2:12-cv-00601, Doc. No. 97). Substantial authority supports use of funds obtained from a partial settlement for these purposes.

Neither Settlement Class Counsel's request, nor the granting of such a request, is unusual. Indeed, the *Manual for Complex Litigation, Fourth* §13.21 (2004), provides that "partial settlements may provide funds needed to pursue the litigation…." *Accord Packaged Ice*, 2011 WL 717519, at *13-14 (approving class counsel's request to use up to $750,000 of proceeds from early settlement to pay litigation expenses); *Linerboard,* 292 F. Supp. 2d at 643 (noting that a partial "settlement provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants"); *In re Corrugated Container Antitrust Litig.,* 556 F. Supp. 1117, 1146 (S.D. Tex. 1982) ("the nonrefundable amount of $187,500 made available to plaintiffs by this settlement provided a substantial sum to help defray plaintiffs' expenses at a time when their trial preparation costs were mounting rapidly"); *In re M.D.C. Holdings Sec. Litig*., No. 89-0090, 1990 WL 454747, at *10 n.10 (S.D. Cal., Aug. 30, 1990) ("In recognition of the magnitude of the expenses likely to be incurred in prosecuting the actions against the defendants who have not settled, the Stipulation of Settlement provides for the establishment of a $1 million fund 'to pay the actual expenses incurred in the further prosecution of the Litigation against the Non-Settling Defendants' (Stipulation of Settlement at ¶ 11.1). The establishment of this fund will insure adequate funding for the vigorous ongoing prosecution of the case for the class, is of obvious benefit to the class, and is approved by the Court.").

16

Numerous other courts also have granted requests to use a portion of settlement proceeds for the continued prosecution of litigation. For example, in *Newby v. Enron Corp.,* 394 F.3d 296, 302-03 (5th Cir. 2004), the Fifth Circuit, affirmed an order providing for the establishment of a $15 million litigation expense fund from the proceeds of a partial settlement. In *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08–MDL–1935, 2011 WL 6981200, at *3 (M.D. Pa. Dec. 12, 2011), the court authorized plaintiffs to utilize the settlement fund to pay "such expenses as may reasonably be incurred in the prosecution of the Class Action." In *Labelstock*, 584 F. Supp. 2d at 702, the court approved class counsel's request for an award of $500,000 to pay outstanding and future litigation costs. *See also In re WorldCom, Inc. Sec. Litig.,* 02 CIV 3288(DLC), 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) (creating a $5 million fund for the continuation of the litigation against the non-settling defendants).

Settlement Class Counsel respectfully request that they be permitted to use up to $1 million from the Settlement Fund to pay expenses incurred in the prosecution of this litigation.

## VI.   CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE

In the Preliminary Approval Order, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of the proposed settlement only, the following class:

> All individuals and entities who purchased Occupant Safety Systems in the United States directly from one or more Defendants or any of the Defendants' respective parents, subsidiaries, or affiliates from January 1, 2003 through May 30, 2014.

Preliminary Approval Order at ¶ 4.

It is well-established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Ford*, 2006 WL 1984363, at *3, *18; *Cardizem,* 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70

17

(E.D. Ky. 2009).[11] As demonstrated below, this action meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

### A.  The Proposed Direct Purchaser Settlement Class Satisfies Rule 23(a)

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

### 1.  The Settlement Class is Sufficiently Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test to satisfy the numerosity requirement and the most important factor is whether joinder of all the parties would be impracticable for any reason. *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity). Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, copies of the Notice were mailed to over 1,200 entities, geographically dispersed throughout the United States, which were identified by Defendants as direct purchasers of Occupant

---

[11] Paragraph 20 of the Preliminary Approval Order provides that provisional certification of the Settlement Class will be without prejudice to the rights of any Defendant to contest certification of any other class proposed in these coordinated actions. *See Packaged Ice*, 2011 WL 717519, at *7.

Safety Systems. Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.   Common Questions of Law and Fact Exist

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class." "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 *NEWBERG ON CLASS ACTIONS*, § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered into an illegal agreement to artificially fix prices of Occupant Safety Systems is a factual question common to all Settlement Class members because it is an essential element of proving an antitrust violation. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on class members. *Packaged Ice*, 2011 WL 717519, at *6 (holding commonality satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class

members." *Flat Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3. Direct Purchaser Plaintiffs' Claims are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford*, 2006 WL 1984363, at *19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Direct Purchaser Plaintiffs' claims arise from the same course of conduct as the claims of the Settlement Class: the Defendants' alleged violations of the antitrust laws. Direct Purchaser Plaintiffs and the Settlement Class are proceeding on the same legal claim, an alleged violation of Section 1 of the Sherman Act. *See UAW*, 497 F. 3d at 625. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Direct Purchaser Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Automotive Component Carrier LLC*, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 2, 2010) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here. The interests of the proposed Settlement Class representatives, Beam's Industries, Inc. and Findlay Industries, Inc., are the same as those of other Settlement Class members. Direct Purchaser Plaintiffs are direct purchasers of Occupant Safety Systems from a Defendant in the United States. Direct Purchaser Plaintiffs and the other Settlement Class members claim that they were injured as a result of the alleged conspiracy, and seek to prove that Defendants violated the antitrust laws. Direct Purchaser Plaintiffs' interests are thus aligned with those of the Settlement Class.

Moreover, Direct Purchaser Plaintiffs have retained qualified and experienced counsel to pursue this action.[12] Settlement Class Counsel vigorously represented Direct Purchaser Plaintiffs and the Settlement Class in the settlement negotiations with Autoliv, and have vigorously prosecuted this action. Adequate representation under Rule 23(a)(4) is therefore satisfied.

### B.  Direct Purchaser Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes

In addition to satisfying Rule 23(a), plaintiffs must show that the class falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

---

[12] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman Kodroff & Willis, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* cases. They submit that, for the same reasons that the Court appointed them to that position, their appointment as Settlement Class Counsel is appropriate.

### 1. Common Legal and Factual Questions Predominate.

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *Scrap Metal*, 527 F.3d at 535; *Packaged Ice*, 2011 WL 717519, at *6; *In re Southeastern Milk Antitrust Litig.*, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members' . . . . Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." 527 F.3d at 535 (emphasis in original).

In this case the same set of core operative facts and theory of liability apply to each Settlement Class member. As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Occupant Safety Systems is a question common to all Settlement Class members because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6. If Direct Purchaser Plaintiffs and the other Settlement Class members brought individual actions, they would each be required to prove the same wrongdoing by Defendants in order to

22

establish liability. Therefore, common proof of Defendants' violations of antitrust law will predominate.

### 2.   A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed.R.Civ.P. 23(b)(3).

All Occupant Safety Systems litigation has been centralized in this Court. If a Settlement Class member wants to control its own litigation, it can request exclusion from the Settlement Class. Thus, consideration of factors (1) - (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement only class it need not consider the difficulties in managing a trial of the case because the idea is that the settlement will end the litigation without a trial. *E.g., Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Class is not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own." *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)). Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all Settlement Class members. *E.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action

because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury."). The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive, *In re NASDAQ Market-Makers Antitrust Litig*., 169 F.R.D. 493, 527 (S.D.N.Y 1996). Thus, class litigation is superior to the alternatives in this case.

## VII.   CONCLUSION

For the foregoing reasons, Direct Purchaser Plaintiffs respectfully request that the Court grant final approval of the settlement, certify the Settlement Class for purposes of the settlement only, and grant Settlement Class Counsel's request to use up to $1 million from the Settlement Fund for the prosecution of this action.

Dated: October 17, 2014                          Respectfully Submitted,

*/s/ David H. Fink*
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON
 & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
 & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
 & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2014, I electronically filed the foregoing paper with the

Clerk of the court using the ECF system which will send notification of such filing to all counsel of

record registered for electronic filing.

FINK + ASSOCIATES LAW

By: /s/David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
100 West Long Lake Road, Suite111
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkandassociateslaw.com