## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | CASE NO. 12-MD-02311 HON. MARIANNE O. BATTANI |
| In Re: OCCUPANT SAFETY SYSTEMS CASES | |
| THIS RELATES TO: ALL DIRECT PURCHASER ACTIONS | 12-cv-00601-MOB-MKM |

### DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH TRW DEFENDANTS AND PROPOSED PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS

Direct Purchaser Plaintiffs hereby move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlement with TRW Deutschland Holding GmbH and TRW Automotive Holdings Corp. (collectively, "TRW"), and the proposed plan for distribution of settlement funds.  In support of this motion, Plaintiffs rely upon the accompanying memorandum of law, which is incorporated by reference herein.

DATED: June 4, 2015                    Respectfully submitted,


 /s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone:  (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone:  (207) 791-3000

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone:  (215) 238-1700

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
   & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | CASE NO. 12-MD-02311 HON. MARIANNE O. BATTANI |
| In Re: OCCUPANT SAFETY SYSTEMS CASES | |
| THIS RELATES TO: ALL DIRECT PURCHASER ACTIONS | 2:12-cv-00601-MOB-MKM |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENT WITH TRW DEFENDANTS AND
<u>PROPOSED PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS</u>**

TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................ iii

**STATEMENT OF ISSUES PRESENTED** ............................................... vii

**STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES** ....... viii

**INTRODUCTION** ....................................................................................... 1

**I.      BACKGROUND** ............................................................................... 2

**II.     TERMS OF THE TRW SETTLEMENT AGREEMENT** ............................ 5

**III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT** ........................... 7

**A.     The Governing Standards for Final Approval.** ............................... 7

**B.     The Proposed Settlement With TRW is Fair, Reasonable and Adequate.** ....... 9

   **1.     The Likelihood of Direct Purchaser Plaintiffs' Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval.** ................................. 10

   **2.     The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.** .......................................................... 12

   **3.     The Judgment of Experienced Counsel Supports Approval.** ............. 13

   **4.     The Amount of Discovery Completed and the Character of the Evidence Uncovered Are Sufficient, Particularly in Light of the Several Guilty Pleas of Defendants in the Occupant Safety Systems Litigation.** ............................................. 13

   **5.     The Reaction of Class Members.** ......................................... 14

   **6.     The Settlement Agreement is the Product of Arm's-Length Negotiations.** ...................................................................... 14

   **7.     The Settlement is Consistent With the Public Interest.** ................. 15

**IV.    NOTICE WAS PROPER UNDER RULE 23 AND DUE PROCESS** ........................ 15

**V.     THE PROPOSED PLAN FOR DISTRIBUTION OF THE SETTLEMENT FUNDS IS FAIR, REASONABLE AND ADEQUATE AND MERITS APPROVAL** ........................... 17

**VI.    CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE** ................ 18

   **A.     The Proposed Direct Purchaser Settlement Class Satisfies Rule 23(a).** ......... 19

      **1.     The Settlement Class is Sufficiently Numerous.** ..................... 19

      **2.     Common Questions of Law and Fact Exist.** ........................... 20

i

3.  **Direct Purchaser Plaintiffs' Claims are Typical of Those of the Settlement Class.** .................................................. 21

4.  **Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.** .................................................................... 21

B.  **Direct Purchaser Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.** ............................................. 22

1.  **Common Legal and Factual Questions Predominate.** ......................... 23

2.  **A Class Action is Superior to Other Methods of Adjudication.** ......... 24

VII.  **CONCLUSION** .......................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................18, 23, 24

*Barry v. Corrigan*,
    2015 WL 136238 (E.D. Mich. Jan 9, 2015)...................................................20, 21

*Beattie v. CenturyTel, Inc.*,
    511 F.3d 554 (6th Cir. 2007) ........................................................................23

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)...........................................................................................8

*Date v. Sony Electronics, Inc.*,
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)...................13, 19, 21

*Davidson v. Henkel Corp.*,
    302 F.R.D. 427 (E.D. Mich. 2014) ...............................................................19

*Dick v. Sprint Commc'ns*
    297 F.R.D. 283 (W.D. Ky. 2014)................................................................6, 8

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*,
    2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ...........................................20

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)............................................................................8

*Grenada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir.1992) .....................................................................10, 15

*Griffin v. Flagstar Bancorp, Inc.*,
    No. 2:10–cv–10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)............ passim

*Hoving v. Lawyers Title Ins. Co.*,
    256 F.R.D. 555 (E.D. Mich. 2009) ...............................................................23

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ........................................................................20

*In re American Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D. N.Y. 2001).........................................................17

*In re Automotive Parts Antitrust Litig.*,
   2:12-md-02311, 2014 WL 4272774 (E.D. Mich. Aug. 29, 2014) ..............................................3

*In re Automotive Parts Antitrust Litig.*,
   2:12-md-02311, 2014 WL 4272784 (E.D. Mich. Aug. 29, 2014) ..............................................3

*In re Automotive Refinishing Paint Antitrust Litig.*,
   617 F.Supp.2d. 336 (E.D.Pa.2007) ...................................................................................6, 17

*In re Automotive Refinishing Paint Antitrust Litig.*,
   MDL No. 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ...........................................8, 17

*In re Cardizem CD Antitrust Litig*,
   200 F.R.D. 297 (E.D. Mich. 2007) ...................................................................................24, 25

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................ passim

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08–MD01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010).........................................6

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ........................................................................................13

*In re Flat Glass Antitrust Litig.*,
   191 F.R.D 472 (W.D. Pa. 1999) ......................................................................................20, 21

*In re Flonase Antitrust Litig.*,
   284 F.R.D. 207 (E.D. Pa. 2012).............................................................................................25

*In re Flonase Antitrust Litig.*,
   291 F.R.D. 93 (E.D. Pa. 2013) ...............................................................................................17

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y.2004) .............................................................................................14

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)..............................................................................................17

*In re Insurance Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (E.D. Pa. 2013)..............................................................................................15

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ...........................................................................5, 6, 11

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y 1996) .............................................................................................25

iv

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .................................. 9, 14

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ...............................14, 17

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)............................... passim

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) ...................................................................................11

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ................................................................................................ 23

*In re Southeastern Milk Antitrust Litig.*,
2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) .....................................................................23

*In re Southeastern Milk Antitrust Litig.*,
2:07-CV-208, 2013 WL 2155379 (E.D. Tenn. May17, 2013) ...........................................6, 12

*In Re Telectronics Pacing Sys. Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ..............................................................................9, 12

*In re Vitamins Antitrust Litig.*,
No. 99-197, 2000 WL 1737867 (D. D.C. March 31, 2000)....................................................18

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ................................................................................... 19, 20, 21

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)...................................... passim

*IUE-CWA v. General Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) .....................................................................................8, 10

*Law v. National Collegiate Athletic Ass'n.*,
108 F.Supp.2d 1193 (D. Kan. 2000) .....................................................................................17

*Lessard v. City of Allen Park*,
372 F. Supp. 2d 1007 (E.D. Mich. 2005).................................................................................7

*Marsden v. Select Medical Corp.*,
246 F.R.D. 480 (E.D. Pa. 2007)..............................................................................................20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950).................................................................................................................15

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006) ............................................................................8

*Paper Systems Inc. v. Mitsubishi Corp.*,
    193 F.R.D. 601 (E.D. Wisc. 2000) ........................................................................25

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) ...............................................................................22

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09–cv–14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ........................... passim

*Sheick v. Automotive Component Carrier LLC*,
    2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) .......................................................22

*Smith v. MCI Telecoms Corp.*,
    No. Civ. A. 87-2110-EEO, 1993 WL 142006 (D. Kan. April 28, 1993) ...............................17

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) .................................................................19, 20, 21

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ..............................................................................9, 17

*Thacker v. Chesapeake Appalachia, LLC*,
    259 F.R.D. 262 (E.D. Ky. 2009) .........................................................................18

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ............................................................................ passim

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir.1983) ...............................................................7, 9, 12, 13

## FEDERAL STATUTES

28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005") ..........................................................4

## RULES

Federal Rule of Civil Procedure ................................................................................ passim

## OTHER AUTHORITIES

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, §12.35, at 350 (4th Ed.
    2002) ("*Newberg*") ...........................................................................................17, 18

4 *Newberg on Class Actions*, § 18.05-15 (3d ed. 1992) .................................................................20

**STATEMENT OF ISSUES PRESENTED**

1.     Whether the proposed settlement between the Direct Purchaser Plaintiff Settlement Class (the "Settlement Class") and Defendants TRW Deutschland Holding GmbH and TRW Automotive Holdings Corp. (collectively, "TRW"), as set forth in the Settlement Agreement between the Settlement Class and TRW, is fair, reasonable and adequate, and whether the Court should approve the settlement under Fed.R.Civ.P. 23;

2.     Whether the Court should certify the Settlement Class for purposes of the settlement only; and

3.     Whether the Court should approve the proposed plan for distribution of settlement funds.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
     521 U.S. 591 (1997)

*Bobbitt v. Acad. of Court Reporting*,
     No. 07-10742, 2009 WL 2168833 (E.D. Mich. Jul. 21, 2009)

*Date v. Sony Electronics, Inc.*,
     No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.*,
     No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
     218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
     248 F.R.D. 483 (E.D. Mich. 2008)

*In re Packaged Ice Antitrust Litig.*,
     No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re Packaged Ice Antitrust Litig.*,
     No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
     527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
     722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
     No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
     No. 09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
     133 F.3d 388 (6th Cir. 1998)

*UAW v. General Motors Corp.*,
     497 F.3d 615 (6th Cir. 2007)

## INTRODUCTION

Plaintiffs Beam's Industries, Inc. and Findlay Industries, Inc., on behalf of a proposed Settlement Class of direct purchasers of Occupant Safety Systems in the United States, submit this memorandum in support of their motion for final approval of the proposed settlement with the TRW Defendants.   Under the terms of the settlement, TRW will pay $8 million (the "Settlement Fund") and provide substantial cooperation to assist Direct Purchaser Plaintiffs in the prosecution of their claims against the remaining Defendants.

The TRW settlement was reached after this Court gave final approval to a $36.5 million settlement with the Autoliv Defendants (2:12-cv-00601, Doc. No. 110), and was the result of many months of negotiations.   In connection with the approval process for this settlement, Plaintiffs propose to make a distribution to members of the Settlement Class, subject to Court approval, from the combined TRW and Autoliv settlement funds, and will apply to the Court for an award of attorneys' fees and expenses.[1]

Direct Purchaser Plaintiffs respectfully submit that the proposed settlement is fair, reasonable and adequate, and should be approved by the Court.   Settlement Class Counsel also request that the Court approve the proposed plan for distribution of the settlement proceeds to Settlement Class members. Submitted herewith is a proposed Order and Final Judgment in the form agreed to by Direct Purchaser Plaintiffs and TRW (Exhibit 1, also submitted via ECF utility) and a proposed order granting the proposed distribution plan (Exhibit 2, also submitted via ECF utility).

---

[1] A separate motion for an award of attorneys' fees and reimbursement of litigation costs and expenses is being filed today with the Court.

1

## I.       BACKGROUND

In 2012, class action lawsuits were filed against the Defendants by Plaintiffs on behalf of a class of direct purchasers of "Occupant Safety Systems."[2]   On August 7, 2012, the Court appointed the undersigned law firms Interim Lead and Liaison Counsel for the Direct Purchaser Plaintiffs.   (2:12-md-02311, Doc. No. 271).   The Direct Purchaser Plaintiffs' actions were consolidated and coordinated for pretrial purposes on January 15, 2013.  (2:12-cv-00600, Doc. No. 64).

Direct Purchaser Plaintiffs filed a Consolidated Amended Class Action Complaint ("Consolidated Amended Complaint") on July 3, 2013 (2:12-cv-00601, Doc. No. 65), and a Second Consolidated Amended Class Action Complaint ("Second Consolidated Amended Complaint") on February 28, 2014.  (2:12-cv-00601, Doc. No. 81).  Direct Purchaser Plaintiffs allege that Defendants entered into a conspiracy to suppress and eliminate competition for Occupant Safety Systems by agreeing to fix, maintain, or stabilize prices, rig bids, and allocate the supply of Occupant Safety Systems, in violation of federal antitrust laws.  Direct Purchaser Plaintiffs further allege that as a result of the conspiracy, they and other direct purchasers of Occupant Safety Systems were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct, and they seek recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

TRW and the other Defendants deny Plaintiffs' allegations.  On October 21, 2013, Defendants filed Rule 12(b)(6) motions to dismiss Direct Purchaser Plaintiffs' Consolidated

---

[2] "Occupant Safety Systems," for purposes of the settlement, are seat belts, airbags, steering wheels or steering systems, safety electronic systems, and related parts and components.

Amended Complaint[3], including a collective Defendants' motion (2:12-cv-00601, Doc. No. 75) and a separate motion by Defendant TRW Automotive Holdings Corp. (2:12-cv-00601, Doc. No. 74). The Court denied both motions. *In re Automotive Parts Antitrust Litig.,* 2:12-md-02311, 2014 WL 4272784 (E.D. Mich. Aug. 29, 2014) and *In re Automotive Parts Antitrust Litig.,* 2:12-md-02311, 2014 WL 4272774 (E.D. Mich. Aug. 29, 2014).

TRW then answered the Second Consolidated Amended Complaint, denying Direct Purchaser Plaintiffs' allegations of liability and damages and asserting several affirmative and other defenses.

Direct Purchaser Plaintiffs reached a settlement with Autoliv, which is memorialized in an agreement dated May 30, 2014. (2:12-cv-00601, Doc. No. 94-2). On July 9, 2014, this Court preliminarily approved the Autoliv settlement and authorized dissemination of notice to the Settlement Class. (2:12-cv-00601, Doc. No. 97 at ¶ 4). Notice was disseminated to Settlement Class members in accordance with the terms of the Court's Order and, following a hearing on December 3, 2014, the Court granted final approval to the Autoliv settlement on January 7, 2015. (2:12-cv-00601, Doc. No. 110).

Following protracted settlement negotiations, Direct Purchaser Plaintiffs have reached a settlement with the TRW Defendants, which is memorialized in an agreement dated February 25, 2015. (2:12-cv-00601, Doc. No. 113-1) (the "Settlement Agreement").

---

[3] Direct Purchaser Plaintiffs filed their Second Consolidated Amended Complaint in order to extend the Class Period and to reflect guilty pleas and criminal informations that were filed subsequent to the filing of the Consolidated Amended Complaint. The parties stipulated that Defendants could supplement their motions or merely reincorporate their previously-filed motions. Defendants did not file any supplemental pleadings.

On April 9, 2015, this Court preliminarily approved the proposed TRW settlement and authorized dissemination of notice to the Settlement Class, which the Court provisionally certified for purposes of the proposed settlement only, and defined as follows:

> All individuals and entities who purchased Occupant Safety Systems in the United States directly from one or more Defendants or any of the Defendants' respective parents, subsidiaries or affiliates, or any co-conspirator of a Defendant from January 1, 2003 through February 25, 2015.

(2:12-cv-00601, Doc. No. 116 at ¶ 4) (the "Preliminary Approval Order").[4]

Pursuant to the Preliminary Approval Order, on April 30, 2015, 1,342 copies of the Notice of Proposed Settlement of Direct Purchaser Class Action With TRW Defendants and Hearing on Settlement Approval and Request for Attorneys' Fees and Payment of Litigation Costs and Expenses, and Claim Form (the "Notice") were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants. Further, a Summary Notice of Proposed Settlement of Direct Purchaser Class Action with TRW Defendants and Hearing on Settlement Approval and Request for Attorneys' Fees and Payment of Litigation Costs and Expenses, and Claim Form (the "Summary Notice") was published in one edition of *Automotive News*, and in the national edition of *The Wall Street Journal*, on May 11, 2015. In addition, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[5]

The deadline for submission of objections to the proposed settlement or proposed plan of distribution, and for requests for exclusion from the Settlement Class, is June 24, 2015. To date,

---

[4] For purposes of the Settlement Class definition, "Defendants" are: Autoliv Inc.; Autoliv ASP, Inc.; Autoliv B.V. & Co. KG; Autoliv Japan Ltd.; Takata Corporation; TK Holdings, Inc.; Tokai Rika Co., Ltd.; TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc.; Toyoda Gosei Co., Ltd.; Toyoda Gosei North America Corporation; TG Missouri Corporation; TRW Automotive Holdings Corp.; and TRW Deutschland Holding GmbH.

[5] TRW's counsel have informed Settlement Class Counsel that TRW fulfilled its obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005"), by disseminating the requisite notice to the appropriate federal and state officials on March 20, 2015.

there have been no objections to either the proposed settlement or distribution plan, or requests for exclusion.

## II.    TERMS OF THE TRW SETTLEMENT AGREEMENT

TRW is paying $8 million in cash.  This amount has been deposited into an interest-bearing escrow account in accordance with the provisions of the Settlement Agreement (¶¶ 20-21), and these funds have been accruing interest for the benefit of the Settlement Class.[6]

In addition to the cash payment, the proposed settlement requires TRW to provide Direct Purchaser Plaintiffs with extensive cooperation in the continued prosecution of their claims against the remaining Defendants, by providing, *inter alia*, documents, English translations, transactional data, interviews, depositions, and trial testimony of current and former directors, officers and employees of TRW, as well as meetings with TRW's outside counsel during which they will provide proffers relevant to the claims in this litigation.  *Id.* at ¶¶ 28-34.  As stated in *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003), such cooperation provisions provide a "substantial benefit" to the class and "strongly militate[] toward approval of the Settlement Agreement."  This cooperation will enhance and strengthen Direct Purchaser Plaintiffs' prosecution of their claims against the remaining Defendants.

In exchange for the settlement payment and cooperation, the proposed settlement provides, *inter alia,* for the release by Direct Purchaser Plaintiffs, and the other members of the Settlement Class, of "Released Claims" against TRW, and other "Releasees" (as defined in the Settlement Agreement).  The Released Claims are antitrust and similar claims arising from the conduct alleged in the Complaint. *Id.* at ¶¶ 18-19.  The releases specifically exclude claims based

---

[6] The Settlement Agreement provides that the Settlement Fund may be reduced based upon valid and timely requests for exclusion by members of the Settlement Class. Settlement Agreement at ¶ 22.  The details of the possible Settlement Fund reduction are set forth in a confidential side letter that will be provided to the Court for *in camera* review upon request.

upon indirect purchases of Occupant Safety Systems; claims based on negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defects, breach of product warranty, or certain breach of contract claims relating to Occupant Safety Systems; claims for purchases made outside the United States and not involving the delivery of Occupant Safety Systems in or into the United States; claims brought under laws other than those of the United States; and claims concerning any automotive part other than Occupant Safety Systems. *Id.* at ¶ 18.

Moreover, TRW's sales to the Settlement Class remain in the case as a potential basis for joint and several liability and damages against other current or future Defendants in the litigation. *Id.* at ¶ 45.

Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns ,* 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F.Supp.2d. 336, 341 (E.D.Pa.2007).

The TRW Settlement Agreement was entered into only after extensive arm's-length negotiations between experienced and sophisticated counsel. During the negotiations, the merits of the respective parties' positions were thoroughly discussed and evaluated. As part of the settlement negotiations, the parties communicated extensively, and Settlement Class Counsel analyzed relevant industry data and other pertinent information. The settlement negotiations

were protracted and hard-fought.  The settlement with TRW is the result of these extensive good-faith negotiations, after factual investigation and legal analysis by experienced counsel, and is based upon the attorneys' full understanding of the strengths and weaknesses of the case.

Plaintiffs believe that the proposed settlement is fair, reasonable and adequate.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.   The Governing Standards for Final Approval.

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10–cv–10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *7  (E.D. Mich. Feb. 22, 2011).  *Accord UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions).

A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest."  *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921–23 (6th Cir.1983)).  This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick v. Auto. Component Carrier LLC*, No. 2:09–cv–14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

A court has broad discretion in deciding whether to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).  In exercising this discretion, courts give considerable weight and deference

to the views of experienced counsel as to the merits of an arm's-length settlement.  *Dick*, 297 F.R.D. at 297 ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation").  Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted); *accord In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006), nor to "decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981).  In light of the uncertainties and risks inherent in any litigation, courts take a common-sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick,* 2010 WL 4136958, at *15 (citation omitted).  Moreover, a district court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution."  *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

Because the proposed settlement was negotiated at arm's length by experienced counsel knowledgeable about the facts and the law and is fair, reasonable, and adequate, Direct Purchaser Plaintiffs respectfully submit that it merits final approval.

**B.    The Proposed Settlement With TRW is Fair, Reasonable and Adequate.**

Under Fed.R.Civ.P. 23(e)(2), "[t]o warrant district court approval, a class action settlement must be fair, reasonable, and adequate." *Sheick*, 2010 WL 4136958, at *14. *Accord Packaged Ice*, 2011 WL 717519, at *8. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Vukovich*, 720 F.2d at 921); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

Courts in the Sixth Circuit have identified a number of related factors that are relevant in determining whether a settlement is fair, reasonable and adequate: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8. *Accord UAW  v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007); *Griffin*, 2013 WL 6511860, at *3; *Cardizem*, 218 F.R.D. 508 at 522.   No single factor is dispositive.  When evaluating the fairness of a settlement, the court may weigh each factor based on the circumstances of the case, *Ford*, 2006 WL 1984363, at *21, and may "choose to consider only those factors that are relevant to the settlement at hand.  *Id.* at *22. *See also Grenada Invs.,*

*Inc. v. DWG Corp.,* 962 F.2d 1203, 1205–06 (6th Cir.1992) (district court enjoys wide discretion in assessing the weight and applicability of factors).  As discussed more fully below, the TRW settlement is fair, reasonable and adequate under the relevant criteria, and warrants approval under Rule 23(e)(2).

        **1.**     **The Likelihood of Direct Purchaser Plaintiffs' Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval.**

When considering the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'"  *Sheick,* 2010 WL 4136958, at *15 (quoting *IUE-CWA,* 238 F.R.D. at 594); *Ford,* 2006 WL 1984363, at *21.

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW,* 497 F.3d at 631.  In assessing the parties' dispute and weighing the likelihood of plaintiffs' success on the merits if the litigation continues against the benefits of the settlement, the ultimate question for the court is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued.  *Sheick,* 2010 WL 4136958, at *16 (citing *IUE–CWA,* 238 F.R.D. at 595).

Plaintiffs are optimistic about the likelihood of ultimate success in this matter, but acknowledge that a successful resolution is not guaranteed.  Only one of the TRW Defendants (TRW Deutschland Holding GmbH) has pleaded guilty to committing antitrust violations, and its plea covers a shorter conspiracy period (January 1, 2008 until at least June 2011) than that alleged in Plaintiffs' Complaint.  TRW has also denied allegations of liability and damages and asserted a number of defenses.  Further, Plaintiffs believe that TRW, which is represented by highly experienced and competent counsel, was prepared to defend this case through trial and

10

appeal, if necessary.  Risk is inherent in any litigation, and this is particularly true with respect to class actions.  So while they are optimistic about the outcome of this litigation, Direct Purchaser Plaintiffs must acknowledge the risk that TRW could prevail with respect to certain legal or factual issues, which could result in reducing or eliminating any potential recovery.

These risks must be weighed against the settlement consideration: $8 million in cash and extensive cooperation by TRW, which is valuable to the Settlement Class members as they continue to litigate against the remaining defendants Takata Corporation, TK Holdings, Inc., Tokai Rika Co., Ltd., and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc.

As noted above, courts have characterized such cooperation as providing a "substantial benefit" that "strongly militates toward approval of the Settlement Agreement."  *Linerboard*, 292 F. Supp. 2d at 643.  *Accord In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) (noting that cooperation by the settling defendant "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants."); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ) ("the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").  The cooperation to be provided by TRW under the Settlement Agreement provides just such a substantial benefit to the Settlement Class.[7]

Settlement Class Counsel believe that the proposed settlement represents an excellent recovery for the Settlement Class.  Weighing the settlement's benefits against the risks of continued litigation tilts the scale toward approval.  *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

---

[7] In accordance with the terms of the Settlement Agreement, TRW began providing information to the Direct Purchaser Plaintiffs after the settlement was preliminarily approved.

**2. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.**

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (quoting *Vukovich,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with class actions, which are "inherently complex."). *Accord Southeastern Milk*, 2013 WL 2155379, at *4; s*ee also Cardizem*, 218 F.R.D. at 533 ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex….").

Because Direct Purchaser Plaintiffs are still litigating against the remaining Defendants, it would be imprudent to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation because those Defendants could use any such disclosures against Direct Purchaser Plaintiffs going forward. Settlement Class Counsel believe it is sufficient at this time to state that complex antitrust litigation of this scope has certain inherent risks that the settlement at least partially negates.

The proposed settlement eliminates the risks and reduces the expense and delay that would otherwise be associated with a recovery from TRW, ensures a substantial payment to the Settlement Class, and provides the Settlement Class with cooperation that will be used to pursue the claims against the remaining Defendants. This factor also supports final approval of the proposed settlement.

### 3.    The Judgment of Experienced Counsel Supports Approval.

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008).  Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18).  "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation.  They have represented the Direct Purchaser Plaintiffs from the inception of the *Automotive Parts Antitrust Litigation*, and negotiated this settlement at arm's length with well-respected and experienced counsel for TRW.  Settlement Class Counsel believe the proposed settlement is an excellent result.

### 4.    The Amount of Discovery Completed and the Character of the Evidence Uncovered Are Sufficient, Particularly in Light of the Several Guilty Pleas of Defendants in the Occupant Safety Systems Litigation.

Although the amount of formal discovery in this action has been limited due to the discovery stay imposed by the Court at the Department of Justice's request, ample evidence and information about the Occupant Safety Systems conspiracy was disclosed in connection with the

related criminal litigation, and obtained through Settlement Class Counsel's investigation.[8]   In addition to their own investigation, Settlement Class Counsel have analyzed criminal informations and plea agreements relating to Autoliv, Inc., TRW Deutschland Holding GmbH, Takata Corporation, and several of these Defendants' executives, among other criminal case materials.  The information from these sources allowed Settlement Class Counsel to evaluate not only the strengths and weaknesses of the legal case, but also the potential value of the promised cooperation.   Based on this information, Settlement Class Counsel believe that the TRW settlement is fair, reasonable, and in the best interests of the Settlement Class, and their opinion supports final approval of the settlement.  *Griffin*, 2013 WL 6511860, at *4-5.

     **5.**     **The Reaction of Class Members.**

To date there have been no objections to the proposed settlements or requests for exclusion.  However, the reaction of Settlement Class members cannot be fully gauged at this time, because the deadline for objections and opt-out requests has not yet passed.  Settlement Class Counsel will submit to the Court an updated report on objections or opt-outs, if any, after the June 24, 2015 deadline, and prior to the Fairness Hearing scheduled for July 14, 2015.

     **6.**     **The Settlement Agreement is the Product of Arm's-Length Negotiations.**

Unless rebutted by evidence to the contrary, there is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.  *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,*

---

[8] Although the amount of discovery completed is a factor to be considered in the settlement-approval process, there is no baseline amount of discovery required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6.  The "question is whether the parties had adequate information about their claims."  *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.2004)).  *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011) (absence of formal discovery not an obstacle to settlement approval).

2006 WL 1984363, at *26; *Sheick,* 2010 WL 4136958, at *19-20.  Settlement Class Counsel

have extensive experience litigating antitrust and other complex class action cases, and they

negotiated at all times at arm's length with TRW's counsel.  Consideration of this factor fully

supports final approval of the settlement as well.

### 7. The Settlement is Consistent With the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and

class action suits because they are 'notoriously difficult and unpredictable' and settlement

conserves judicial resources."  *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at

1205).  *Accord Packaged Ice*, 2011 WL 717519, at *12.  Plaintiffs submit that there is no

countervailing public interest that provides a reason to disapprove the proposed settlement.

*Griffin*, 2013 WL 6511860, at *5.  This factor also supports approval.

Consideration of all the above factors supports final approval of the proposed TRW

settlement.  Settlement Class Counsel respectfully submit that the proposed settlement is in the

best interests of the Settlement Class and should be finally approved.

## IV. NOTICE WAS PROPER UNDER RULE 23 AND DUE PROCESS

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a

"reasonable manner" to all class members who would be bound by a proposed settlement.  Rule

23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of

the pendency of the settlement proposed and to afford them an opportunity to present their

objections."  *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339

U.S. 306, 314 (1950)).  *Accord In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151

(E.D. Pa. 2013).

For class actions certified under Rule 23(b)(3), the court must also "direct to class

members the best notice that is practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition;

(3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through

counsel; (5) that the court will exclude from the class any member who requests exclusion; (6)

the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on

class members under Rule 23(c)(3).  *Id.*

The notice program and forms of notice utilized by Plaintiffs satisfy these requirements.

The Notice sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1), and also

describes the proposed plan of distribution of settlement funds[9] and apprises Settlement Class

members that Settlement Class Counsel will seek an award of attorneys' fees and litigation

expenses.  Pursuant to the Preliminary Approval Order, on April 30, 2015, 1,342 copies of the

Notice were mailed, postage prepaid, to all potential Settlement Class members identified by

Defendants.  The Summary Notice was published in one edition of *Automotive News*, and in the

national edition of *The Wall Street Journal,* on May 11, 2015.  In addition, a copy of the Notice

was posted on-line at www.autopartsantitrustlitigation.com.[10]

The notice program comports in all respects with the requirements of Rule 23 and due

process.  *See* Preliminary Approval Order at ¶ 10; *Packaged Ice*, 2011 WL 717519, at *5; *Sheick*,

2010 WL 4136958 at *15.

---

[9] A Proof of Claim Form was sent to Settlement Class members along with the Notice.

[10] Consistent with paragraph 18 of the Preliminary Approval Order, a Declaration or Affidavit confirming that notice to the Settlement Class was disseminated in accordance with the Preliminary Approval Order will be filed at least 10 days prior to the Fairness Hearing.

## V. THE PROPOSED PLAN FOR DISTRIBUTION OF THE SETTLEMENT FUNDS IS FAIR, REASONABLE AND ADEQUATE AND MERITS APPROVAL

Approval of a settlement fund distribution in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan of distribution must be fair, reasonable and adequate. *Packaged Ice*, 2011 WL 6209188, at \*15. *Accord. Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 326 (3d Cir. 2011); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 107 (E.D. Pa. 2013); *Law v. National Collegiate Athletic Ass'n.*, 108 F.Supp.2d 1193, 1196 (D. Kan. 2000); *Automotive Refinishing Paint*, 617 F.Supp.2d at 345. As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Smith v. MCI Telecoms Corp.*, No. Civ. A. 87-2110-EEO, 1993 WL 142006, at \*2 (D. Kan. April 28, 1993); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, §12.35, at 350 (4th Ed. 2002) ("*Newberg*") (noting that pro-rata allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"). An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel. As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight. *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D. N.Y. 2001).

The Notice sent to potential Settlement Class members on April 30, 2015 describes the plan recommended by Co-Lead Counsel for the distribution of settlement funds to Settlement Class members who file timely and proper claim forms. The proposed distribution plan provides for the Autoliv settlement funds and (subject to Court approval) the TRW settlement funds, with

accrued interest, to be allocated among Settlement Class claimants according to the amount of their recognized transactions during the Class Period, after payment of attorneys' fees, litigation and administration costs and expenses.  (Notice at 4.)  *See* 4 *Newberg*, §12.35, at 353-54 (noting propriety of pro-rata distribution of settlement funds).   "Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable."  *In re Vitamins Antitrust Litig*., No. 99-197, 2000 WL 1737867, at *6 (D. D.C. March 31, 2000) (finding proposed plan for pro-rata distribution of partial settlement funds was fair, adequate and reasonable).  *Accord Prandin Direct Purchaser Antitrust Litig.*, C.A. No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *3 (E.D. Mich. Jan. 20, 2015) (approving a plan as fair, reasonable and adequate that utilized a *pro rata* method for calculating each class member's share of the settlement fund).  The proposed plan for allocation and distribution satisfies the above criteria and should receive final approval.

## VI.    CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE

In the Preliminary Approval Order, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of the proposed settlement only, the following class:

> All individuals and entities who purchased Occupant Safety Systems in the United States directly from one or more Defendants or any of the Defendants' respective parents, subsidiaries or affiliates, or any co-conspirator of a Defendant from January 1, 2003 through February 25, 2015.

Preliminary Approval Order at ¶ 4.

It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Ford*, 2006 WL 1984363, at *3, *18; *Cardizem,* 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-

18

70 (E.D. Ky. 2009).[11] As demonstrated below, this action meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

A. **The Proposed Direct Purchaser Settlement Class Satisfies Rule 23(a).**

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

1. **The Settlement Class is Sufficiently Numerous.**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason. *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity); s*ee also Davidson v. Henkel Corp.,* 302 F.R.D. 427, 441 (E.D. Mich. 2014) (noting general acceptance that class of 40 or members is sufficient to satisfy the numerosity requirement). Moreover, numerosity is not determined solely

---

[11] Paragraph 22 of the Preliminary Approval Order provides that provisional certification of the Settlement Class will be without prejudice to the rights of any Defendant to contest certification of any other class proposed in these coordinated actions. *See Packaged Ice*, 2011 WL 717519, at *7.

by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, copies of the Notice were mailed to over 1,300 entities, geographically dispersed throughout the United States, which were identified by Defendants as direct purchasers of Occupant Safety Systems. Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2. Common Questions of Law and Fact Exist.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class." "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 2015 WL 136238, at *13 (E.D. Mich. Jan 9, 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 *Newberg on Class Actions,* § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered into an illegal agreement to artificially fix prices of Occupant Safety Systems is a factual question common to all Settlement Class members because it is an essential element of proving an antitrust violation. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on class members. *Packaged Ice*, 2011 WL 717519, at *6 (holding commonality satisfied by questions concerning "whether

Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity, focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.      Direct Purchaser Plaintiffs' Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Direct Purchaser Plaintiffs' claims arise from the same course of conduct as the claims of the Settlement Class: the Defendants' alleged violations of the antitrust laws. Direct Purchaser Plaintiffs and the Settlement Class are proceeding on the same legal claim, an alleged violation of Section 1 of the Sherman Act. *See UAW*, 497 F. 3d at 625; *Barry*, 2015 WL 136238, at *13. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.      Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the

21

proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Automotive Component Carrier LLC,* 2010 WL 3070130, at *3 (E.D. Mich. Aug. 2, 2010) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here. The interests of the proposed Settlement Class representatives, Beam's Industries, Inc. and Findlay Industries, Inc., are the same as those of other Settlement Class members. Plaintiffs and the other Settlement Class members are direct purchasers of Occupant Safety Systems from a Defendant in the United States. Plaintiffs and the other Settlement Class members claim that they were injured as a result of the alleged conspiracy, and seek to prove that Defendants violated the antitrust laws. Plaintiffs' interests are thus aligned with those of the Settlement Class.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.[12] Settlement Class Counsel vigorously represented Plaintiffs and the Settlement Class in the settlement negotiations with TRW, and have vigorously prosecuted this action. Adequate representation under Rule 23(a)(4) is therefore satisfied.

**B.      Direct Purchaser Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.**

In addition to satisfying Rule 23(a), plaintiffs must show that the class falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under Rule

---

[12] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman Kodroff & Willis, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* cases. They submit that, for the same reasons that the Court appointed them to that position, their appointment as Settlement Class Counsel is appropriate.

22

23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

### 1. Common Legal and Factual Questions Predominate.

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *E.g.*, *Scrap Metal*, 527 F.3d at 535; *Packaged Ice*, 2011 WL 717519, at *6; *In re Southeastern Milk Antitrust Litig.*, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members' . . . . Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." 527 F.3d at 535 (emphasis in original).

In this case the same set of core operative facts and theory of liability apply to each Settlement Class member. As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Occupant Safety Systems is a question common to all

Settlement Class members because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at \*6. If Direct Purchaser Plaintiffs and the other Settlement Class members brought individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. Therefore, common proof of Defendants' violations of antitrust law will predominate.

**2.      A Class Action is Superior to Other Methods of Adjudication.**

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed.R.Civ.P. 23(b)(3).

All Occupant Safety Systems litigation has been centralized in this Court. If a Settlement Class member wants to control its own litigation, it can request exclusion from the Settlement Class. Thus, consideration of the first three factors demonstrates the superiority of a class action.

With respect to the fourth factor, in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement only class it need not consider the difficulties in managing a trial of the case because the idea is that the settlement will end the litigation without a trial. *See, e.g.*, *Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Class is not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own." *In re Cardizem CD Antitrust Litig*, 200 F.R.D.

297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601,

605 (E.D. Wisc. 2000)).  Moreover, by proceeding as a class action, both judicial and private

resources will be more efficiently utilized to resolve the predominating common issues, which

will bring about a single outcome that is binding on all Settlement Class members.  *See, e.g.,*

*Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by

certifying a class in this action because the same illegal anticompetitive conduct by Defendants

gives rise to each class member's economic injury.").  The alternatives to a class action are a

multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re*

*Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class

members for whom the cost of pursuing individual litigation would be prohibitive, *In re*

*NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996).  Thus, class

litigation is superior to the alternatives in this case.

## VII.    CONCLUSION

For the foregoing reasons, Direct Purchaser Plaintiffs respectfully request that the Court

grant final approval of the settlement, certify the Settlement Class for purposes of the settlement

only, and grant Settlement Class Counsel's proposed plan for distribution of the settlement

funds.

DATED: June 4, 2015                                 Respectfully submitted,

/s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500

*Interim Liaison Counsel for the Direct*
*Purchaser Plaintiffs*

25

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone:  (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone:  (207) 791-3000

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
Craig W. Hillwig
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone:  (215) 238-1700

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
   & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*