# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | CASE NO. 2:12-MD-02311 HON. MARIANNE O. BATTANI |
| In Re: OCCUPANT SAFETY SYSTEMS CASES | |
| THIS RELATES TO: ALL DIRECT PURCHASER ACTIONS | 2:12-cv-00601-MOB-MKM 2:16-cv-10002-MOB-MKM |

### SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into this 29th day of January, 2018 ("Execution Date") by and between Tokai Rika Co., Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. (collectively, "Tokai Rika") and Direct Purchaser Plaintiffs (defined herein) in the above-captioned actions, a multidistrict consolidated class action, and each action consolidated therein, both individually and on behalf of a class of direct purchasers of Occupant Safety Systems ("Settlement Class") as more particularly defined in Paragraph 10 below.

WHEREAS, Direct Purchaser Plaintiffs are prosecuting the above *In Re Automotive Parts Antitrust Litigation,* Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation"), and the *Occupant Safety Systems Cases*, Case No. 2:12-cv-00601 (E.D. Mich.) and *Beam's Industries, Inc., et al. v. Toyoda Gosei Co. Ltd, et al*, Case No. 2:16-cv-10002 (E.D. Mich.) (collectively, the "Actions") on their own behalf and on behalf a class of direct purchasers of Occupant Safety Systems against, among others, Tokai Rika;

WHEREAS, Direct Purchaser Plaintiffs allege that they were injured as a result of Tokai

Rika's participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig

bids and allocate markets and customers for Occupant Safety Systems (as defined below) in

violation of Section 1 of the Sherman Act, as set forth in Direct Purchaser Plaintiffs' Second

Consolidated Amended Class Action Complaint filed in Case No. 2:12-cv-00601 (Doc. No. 81)

and the Direct Purchaser Plaintiffs' Class Action Complaint filed in Case No. 2:16-cv-10002

(Doc. No. 1) (collectively the "Complaints");

WHEREAS, Tokai Rika denies Direct Purchaser Plaintiffs' allegations and has asserted

defenses to Direct Purchaser Plaintiffs' claims and denies any liability whatsoever;

WHEREAS, Direct Purchaser Plaintiffs, on behalf of themselves and the Settlement

Class Members (defined herein), and Tokai Rika agree that this Settlement Agreement shall not

be deemed or construed to be an admission or evidence of the truth of any of Plaintiffs' claims

or allegations in the Actions or in any other action that is a part of *In Re Automotive Parts

Antitrust Litigation,* Master File No. 12-md-02311 (E.D. Mich.);

WHEREAS, arm's-length settlement negotiations have taken place between Settlement

Class Counsel (as defined below) and counsel for Tokai Rika;

WHEREAS, this Settlement Agreement embodies all of the terms and conditions of the

good-faith settlement between Tokai Rika and Direct Purchaser Plaintiffs, both individually

and on behalf of the Settlement Class Members, and has been reached as a result of the parties'

negotiations, subject to approval of the United States District Court for the Eastern District of

Michigan (the "Court") as provided herein;

WHEREAS, Direct Purchaser Plaintiffs, through their counsel, have conducted an

investigation into the facts and the law regarding the Actions and have concluded that resolving

2

the claims against Tokai Rika, according to the terms set forth below, is in the best interest of Direct Purchaser Plaintiffs and the Settlement Class because of the payment of the Settlement Amount and the value of the Cooperation (as those terms are defined below) that Tokai Rika has agreed to provide pursuant to this Agreement;

WHEREAS, these Actions will continue against Defendants that are not Releasees (as defined below);

WHEREAS, Tokai Rika, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Settlement Agreement, and to put to rest with finality all claims that have been or could have been asserted against Tokai Rika with respect to Occupant Safety Systems based on the allegations in the Actions, as more particularly set out below;

WHEREAS, the Cooperation (as defined below) that Tokai Rika has agreed to provide to Direct Purchaser Plaintiffs will aid the Direct Purchaser Plaintiffs and reduce the substantial burden and expense in the ongoing prosecution of these Actions; and Direct Purchaser Plaintiffs recognize the benefits of Tokai Rika's Cooperation; and

WHEREAS, Direct Purchaser Plaintiffs understand that because of joint-and-several liability, the Agreement with Tokai Rika does not impair Direct Purchaser Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Class may be entitled in the Actions from other parties besides Tokai Rika and the other Releasees:

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the

3

undersigned that the Actions be settled, compromised, and dismissed with prejudice as to the Releasees, as defined below, and except as hereinafter provided, without costs as to Direct Purchaser Plaintiffs, the Settlement Class, or Tokai Rika, subject to the approval of the Court, on the following terms and conditions:

A.   Definitions.

1.   "Cooperation" refers to the provisions set forth below in Section F.

2.   "Cooperation Materials" means any information, testimony, Documents (as defined below), or any other material provided by Tokai Rika or its counsel under the terms of this Agreement.

3.   "Defendant" means, for purposes of this Settlement Agreement only, any party named as a defendant in the Actions at any time up to and including the date when the Court has entered a final order certifying the Settlement Class described in Paragraphs 10 and approving this Agreement under Federal Rule of Civil Procedure 23(e), including but not limited to any one or more of the following: Autoliv, Inc., Autoliv ASP, Inc., Autoliv Safety Technology, Inc., Autoliv B.V. & Co. KG, Autoliv Japan Ltd., Takata Corporation, TK Holdings, Inc., Tokai Rika Co., Ltd., TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc., Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., TG Missouri Corp., TRW Automotive Holdings Corporation, and TRW Deutschland Holding GmbH.

4.   "Direct Purchaser Plaintiffs" means all persons and/or entities who are named as plaintiffs in the Complaints filed in the Actions.

5.   "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including without

4

limitation, electronically stored information. A draft or non-identical copy is a separate document within the meaning of this term. For purposes of this Agreement, Document shall include all English translations in Tokai Rika's custody, possession or control, excluding documents that are privileged under the attorney work-product doctrine, attorney-client privilege, or any other evidentiary privilege.

6.      "Final Approval" means the first date upon which all of the conditions in Paragraph 17 have been met.

7.      "Occupant Safety Systems", has the same definition as set forth in the Complaints, and shall include seat belts, airbags, steering wheels or steering systems, safety electronic systems, and related parts and components.

8.      "Releasees" shall refer jointly and severally, individually and collectively to Tokai Rika Co., Ltd., TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc., and TRQSS, Inc., f/k/a Quality Safey Systems Company, and to all of their respective past and present, direct and indirect, parents, subsidiaries, affiliates, divisions, including but not limited to the predecessors and successors of each of the above, and their respective past and present officers, directors and employees of each of the foregoing. Releasees does not include any Defendant in the Action other than Tokai Rika Co., Ltd., TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc., and TRQSS, Inc., f/k/a Quality Safety Systems Company, and their parents, subsidiaries and affiliates.

9.      "Releasors" shall refer jointly and severally, individually and collectively, to Direct Purchaser Plaintiffs and the Settlement Class Members, as well as each of their parents, subsidiaries, affiliates, divisions, predecessors, successors and assigns, and their respective past and present officers, directors and employees of each of the foregoing.

10.      For purposes of this Agreement, "Settlement Class" is defined as:

> All individuals and entities who purchased Occupant Safety Systems in the United States directly from one or more Defendants or their co-conspirators (or their controlled subsidiaries, affiliates, or joint ventures) from January 1, 2003 through February 25, 2015. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

11.     "Settlement Class Counsel" shall refer to the following law firms: Freed Kanner London & Millen LLC, 2201 Waukegan Road, Suite 130, Bannockburn, IL 60015; Kohn, Swift & Graf, P.C., One South Broad Street, Suite 2100, Philadelphia, PA 19107; Preti, Flaherty, Beliveau & Pachios, LLP, One City Center, Portland, ME 04101; and Spector Roseman & Kodroff, P.C., 1818 Market Street, Suite 2500, Philadelphia, PA 19103.

12.     "Settlement Class Member" or "Settlement Class Members" means, individually or collectively, members of the Settlement Class who do not timely and validly request exclusion from the Settlement Class.

13.     "Settlement Fund" means US $4,000,000, as specified in Paragraph 21, plus accrued interest as set forth in Paragraph 22(b).

B.     Approval of this Agreement and Dismissal of Claims Against Tokai Rika.

14.     Settlement Class Counsel, Direct Purchaser Plaintiffs and Tokai Rika shall use their best efforts, including, without limitation, all steps and efforts contemplated by this Agreement and any other steps and efforts that may become necessary by order of the Court or otherwise, to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Action as to the Releasees only. Settlement Class Counsel and Tokai Rika agree to recommend approval of

this settlement by the Court and by Settlement Class Members without qualification or condition not set forth herein. The Court's findings and rulings in connection with this settlement shall have no effect on the Court's ruling on any motion to certify any class in the Action or any other action, and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any class or with respect to any defense asserted by any Defendant.

15.     Within ten (10) business days after the execution of this Agreement, Direct Purchaser Plaintiffs and Tokai Rika shall inform the Court that the Direct Purchaser Plaintiffs and Tokai Rika have finalized an agreement to settle the Actions. Subsequently, Direct Purchaser Plaintiffs shall submit to the Court, in a form mutually agreed upon by Tokai Rika and Settlement Class Counsel, a motion in the Actions seeking preliminary approval of this Agreement, authorization to disseminate notice of the proposed settlement to the Settlement Class, and for a stay of all proceedings in the Actions against Tokai Rika by Direct Purchaser Plaintiffs (other than the Cooperation) until the Court renders a final decision regarding the approval of the settlement, and, if it approves the settlement, enters the final judgment (the "Motions"). The Motions shall include the proposed form of an order preliminarily approving this Agreement, and proposed forms of notice. No less than five (5) business days before filing, Plaintiffs shall submit a draft of the Motion to Tokai Rika for approval, which approval shall not be unreasonably withheld.

16.     Direct Purchaser Plaintiffs shall seek, and Tokai Rika will not object unreasonably to, the entry of an order and final judgment in the Actions, the text of which Direct Purchaser Plaintiffs and Tokai Rika shall mutually agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     certifying the Settlement Class described in Paragraph 10, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class in the Actions;

(b)     as to the Actions, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c)     as to Tokai Rika, directing that the Actions be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(d)     discharging and releasing the Releasees from all Released Claims;

(e)     reserving exclusive jurisdiction over the settlement and this Agreement, including the interpretation, administration and consummation of this settlement, as well as over Tokai Rika, for the duration of its provision of Cooperation pursuant to this Agreement, to the United States District Court for the Eastern District of Michigan;

(f)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal of the Actions as to Tokai Rika shall be final; and

(g)     providing that (i) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including Tokai Rika, to contest the certification of any other class proposed in the Actions or any other action, (ii) the Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the Actions, the MDL Litigation, any other action, or on the Court's rulings concerning any Defendant's motion; and (iii) no party may cite or refer to the Court's approval of the Settlement

8

Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

17.     This Agreement shall become final when (i) the Court has entered a final order in the Actions certifying the Settlement Class described in Paragraph 10 and approving this Agreement under Federal Rule of Civil Procedure 23(e); (ii) the Court has entered a final judgment dismissing the Actions with prejudice against all Settlement Class Members as to Tokai Rika and without costs other than those provided for in this Agreement; and (iii) either (a) the time for appeal, or to seek permission to appeal, from the Court's approval of this Agreement and entry of a final judgment as to Tokai Rika described in (i) hereof has expired with no appeal having been taken or permission to appeal having been sought; or (b) if appealed, approval of this Agreement and the final judgment as to Tokai Rika have been affirmed in their entirety by the Court of last resort to which any appeal has been taken or petition for review has been presented, and such affirmance has become no longer subject to the possibility of further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the date that Direct Purchaser Plaintiffs and Tokai Rika have executed this Agreement, Direct Purchaser Plaintiffs and Tokai Rika shall be bound by its terms and this Agreement shall not be rescinded except in accordance with the terms of this Agreement.

18.     Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents (other than those documents that would have been produced in the normal course of discovery) and discussions associated with them (including any Cooperation Materials provided by Tokai Rika), shall be deemed or construed to be an admission by Tokai Rika or any of the Releasees of any fact or matter, or evidence of any violation

of any statute or law or of any liability or wrongdoing whatsoever by Tokai Rika or any of the Releasees, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Actions or MDL Litigation, and evidence thereof shall not be discoverable or used in any way, whether in the Actions, the MDL Litigation, or in any other action, arbitration, or proceeding, against Tokai Rika or any of the Releasees. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by Tokai Rika, shall be referred to, offered as evidence, or received in evidence, in any pending or future civil, criminal, or administrative action, arbitration, or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law. Nothing in this Paragraph shall prevent Direct Purchaser Plaintiffs from using and/or introducing into evidence Cooperation Materials produced pursuant to Section F of this Agreement against any other Defendant besides the Releasees in the MDL Litigation, but Direct Purchaser Plaintiffs may not use such Cooperation Materials against Tokai Rika or the Releasees in the Automotive Parts Antitrust Litigation, No. 2:12-md-02311 or in any other action.

C.    Release, Discharge, and Covenant Not to Sue.

19.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 17 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 21 of this Agreement, into the Settlement Fund, and for Tokai Rika's Cooperation, as specified in Section F of this Agreement, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, damages whenever incurred, liabilities of any nature whatsoever (including without limitation costs, penalties and attorneys' fees), and causes

of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class

Member has objected to the settlement or makes a claim upon or participates in the Settlement

Fund, whether directly, representatively, derivatively or in any other capacity), under any federal,

state, local, statutory or common law of any jurisdiction in the United States, or any other law,

code, rule or regulation, whether in law or in equity, that Releasors, or each of them, ever had, now

have, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account

of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen,

suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries,

damages, and the consequences thereof in any way arising out of or relating in any way to any

conduct, facts, occurrences, or transactions prior to the Execution Date concerning Occupant

Safety Systems, that are alleged, described or referred to, or could have been alleged, described or

referred to in the Complaints in the Actions or to any act or omission of the Releasees, Defendants

or co-conspirators now identified or later identified (or any of them) regardless of where such acts

or omissions occurred, including but not limited to any conduct and causes of action alleged or

asserted or that could have been alleged or asserted, in any class action or other complaints filed

in the Actions concerning Occupant Safety Systems, and including but not limited to claims

relating to the pricing, marketing or sales of Occupant Safety Systems, including, without

limitation, price fixing, bid rigging, or market or customer allocation of Occupant Safety Systems

(the "Released Claims"), provided however, the Released Claims shall not include: (1) any claims

based on indirect purchases of Occupant Safety Systems; (2) claims based on negligence, personal

injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defects, breach

of product warranty, securities, or breach of contract claims relating to Occupant Safety Systems

(to the extent that such breach of contract claims are unrelated to antitrust, conspiracy, or any

claims or causes of actions alleged in the Complaints filed in the Actions); (3) claims brought outside the United States relating to purchases of Occupant Safety Systems outside the United States; (4) claims brought under laws other than federal, state or local laws or regulations of the United States relating to purchases of Occupant Safety Systems outside the United States; and (5) claims concerning any product other than Occupant Safety Systems. The Releasors covenant and agree that they, and each of them, will forever refrain from instituting, maintaining, prosecuting, or continuing to maintain or prosecute any suit or action, or collecting from, seeking to recover from, or proceeding against the Releasees in connection with any of the Released Claims, unless this Agreement is not finally approved by the Court or is terminated in accordance with the provisions of this Agreement.

20.     In addition to the provisions of Paragraph 19 of this Agreement, Releasors hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming final, any and all provisions, rights, and benefits, conferred either (a) by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or (b) by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, or (c) by any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth in Paragraph 19 hereof. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be

true with respect to the claims that are released pursuant to the provisions of Paragraph 19 of this Agreement, but each Releasor hereby expressly agrees that, upon Final Approval, it waives and fully, finally, and forever settles and releases, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that Tokai Rika and Direct Purchaser Plaintiffs have agreed to release pursuant to Paragraph 19, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The release of unknown, unanticipated, and unsuspected losses or claims is contractual, and not a mere recital.

D.    Settlement Amount.

21.    Subject to the provisions hereof, and in full, complete and final settlement of the Actions as provided herein, within ten (10) days of preliminary approval of this Agreement, Tokai Rika shall pay the Settlement Amount of US $4,000,000 (the "Settlement Amount") into an escrow account to be administered in accordance with the provisions of Paragraph 22 of this Agreement (the "Escrow Account"). Nothing in this Paragraph shall relieve Tokai Rika from its Cooperation obligations as specified in Section F of this Agreement.

22.    Escrow Account.

(a)    An Escrow Account shall be maintained at The Huntington National Bank. Such escrow shall be administered under the Court's continuing supervision and control.

(b)    All payments into the Escrow Account shall, at the direction of Settlement Class Counsel, be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Bills, U.S. Treasury Money Market Funds or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the

guaranteed FDIC limit. Any interest earned on any of the foregoing shall become part of the Settlement Fund. Tokai Rika and the other Releasees shall have no responsibility for, or liability in connection with, the Settlement Fund and/or Escrow Account, including, without limitation, the investment, administration, maintenance, or distribution thereof.

(c)     All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds are distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)     Subject to Paragraph 24 below, reasonable disbursements for expenses associated with providing notice of the settlement to the Settlement Class, expenses for maintaining and administering the Settlement Fund, and taxes and expenses incurred in connection with taxation matters may be paid without approval from the Court and shall not be refundable to Tokai Rika in the event the Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such funds have actually been expended or incurred for taxation matters, notice costs, and costs of maintaining and administering the Settlement Fund. Any refund that becomes owed to Tokai Rika if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval from the Court. No other disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

(e)     The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of Tokai Rika, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow

Account to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all actions as may be necessary or appropriate to this end. At the direction of Settlement Class Counsel, taxes or estimated taxes shall be paid on any income earned on the funds in the Escrow Account, whether or not Final Approval has occurred. In the event federal or state income tax liability is finally assessed against and paid by Tokai Rika as a result of any income earned on the funds in the Escrow Account, Tokai Rika shall be entitled to reimbursement of such payment from the funds in the Escrow Account after approval of the Court and whether or not Final Approval has occurred. Tokai Rika will use reasonable efforts to resist any such assessment or payment. Except as set forth in this Paragraph, Tokai Rika and any Releasee, and their respective counsel, shall have no responsibility to make any tax filings related to the Settlement Fund or to pay any taxes or tax expenses with respect thereto, and neither Tokai Rika nor any Releasee nor their respective counsel shall have any liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

(f)     If this Agreement does not receive preliminary or final Court approval, including final approval of the Settlement Class as defined in Paragraph 10, or if final approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 16 hereof, or if the Actions are not certified as a class action for settlement purposes, then all amounts paid by Tokai Rika into the Settlement Fund (other than costs expended or incurred in accordance with Paragraphs 22(d) and 24), shall be returned to Tokai Rika from the Escrow Account along with any interest accrued thereon within thirty (30) calendar days after the occurrence of any event mentioned in this Paragraph 22(f).

23.   Exclusions.

Within ten (10) business days after the end of the period to request exclusion from the

Settlement Class, Settlement Class Counsel shall cause copies of requests for exclusion from the Settlement Class to be provided to counsel for Tokai Rika. With respect to any potential Settlement Class Member who requests exclusion from the Settlement Class, Tokai Rika reserves all of its legal rights and defenses. Further, as set forth in a separate, confidential letter agreement between Settlement Class Counsel and Tokai Rika, depending on the number of members of the Settlement Class that request exclusion from the Settlement Class, Direct Purchaser Plaintiffs and Tokai Rika shall each, in their sole discretion, have the right to terminate this Settlement Agreement within thirty (30) days of the expiration of the period for requesting exclusion from the Settlement Class. If either of the parties elects to terminate this Settlement Agreement in accordance with this Paragraph 23, the Settlement Fund (including any and all interest earned thereon) shall, within thirty (30) days of termination of the Settlement Agreement, be refunded to Tokai Rika, less any taxes paid or owed on the earnings of the Settlement Fund and any expenses related to notice and administration as set forth in Paragraphs 22 and 24. In the event that the Court requests the confidential letter agreement referred to above, Settlement Class Counsel will submit the confidential letter agreement to the Court *in camera*.

24.     <u>Notice to the Settlement Class.</u>

Tokai Rika agrees to permit use of a maximum of USD $125,000 (which limitation is effective up until the final approval of this Agreement) of the Settlement Fund towards the costs of notice to the Settlement Class and the costs of administration of the Settlement Fund as set forth in Paragraph 22(d). The notice and administration expenses are not recoverable if this settlement does not become final or is rescinded or otherwise fails to become effective to the extent such

funds have actually been expended or the expenses have been incurred for notice and administration costs.  Other than as set forth in this Paragraph and Paragraph 22(d), Tokai Rika and the other Releasees shall not be liable for any of the costs or expenses of the litigation of the Actions, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Class administration and costs, or for any other notice costs (except as provided for in this paragraph).  If Settlement Class Counsel enter into any other settlements on behalf of a class of Direct Purchaser Plaintiffs in the Occupant Safety Systems litigation after the Execution Date, but before notice of this Agreement is given to the Settlement Class, Settlement Class Counsel shall use reasonable efforts to provide a single notice to prospective Settlement Class members of all such settlements.

E.      The Settlement Fund.

25.      Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against Tokai Rika or any Releasee for the Released Claims.

26.      After this Agreement becomes final within the meaning of Paragraph 17 the Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by Settlement Class Counsel, subject to approval by the Court.  In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs, taxes, and expenses of such distribution and administration with the exception of the provisions set forth in Paragraphs 22 and Paragraph 24 of this Agreement.

27.    Settlement Class Counsel's Attorneys' Fees, Payment of Costs and Expenses, and Incentive Awards for Class Representatives.

Subject to Court approval, Direct Purchaser Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all past, current, or future litigation costs and expenses and any award of attorneys' fees.  Incentive awards to the Direct Purchaser Plaintiffs, if approved by the Court, will also be paid solely out of the Settlement Fund. Attorneys' fees and costs and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to this Agreement.  Neither Tokai Rika nor any Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Direct Purchaser Plaintiffs of any fee or cost and expense award in the Actions.  In addition, neither Tokai Rika nor any Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel and/or Direct Purchaser Plaintiffs, and/or any other person who may assert some claim thereto, of any fee or cost and expense award that the Court may make in the Actions.  The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the

fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to a submission for attorneys' fees, expenses or costs, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

F.      Cooperation.

28.      In addition to its payment of the Settlement Amount set forth in Paragraph 21, and in return for the release and discharge provided herein, Tokai Rika agrees to provide Cooperation to Direct Purchaser Plaintiffs as set forth specifically below at its own expense. Tokai Rika's obligations in this Section F. shall cease as of the date that final judgment has been rendered in the Actions against all Defendants or the last remaining Defendant is dismissed with prejudice and such final judgment or dismissal is no longer subject to appellate review. All Cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided to the extent that cooperation is required by any other settlement agreements. Any Attorney Proffers, witness interviews, or depositions provided pursuant to this Agreement shall be coordinated with, and occur at the same time as, the Attorney Proffers, witness interviews, and depositions to be provided pursuant to any other contemporaneous settlement agreement. Cooperation will take place in a manner that is in compliance with Tokai Rika's obligations to any government entities (including the United States Department of Justice ("DOJ"), the Japanese Fair Trade Commission ("JFTC"), the European Commission ("EU"), or any other government entity).

29.      In return for the release and discharge provided herein, within ten (10) business days of the Execution Date of this Agreement, to the extent not already provided to Settlement Class Counsel, counsel for Tokai Rika shall provide Settlement Class Counsel with the identity of all current and former employees, directors and officers of Tokai Rika who: (1) were interviewed

and/or prosecuted by the United States Department of Justice ("DOJ"), the Japanese Fair Trade Commission, the European Commission, or any other government entity (collectively referred to herein as "Government Entities") in connection with alleged price-fixing, bid rigging, market allocation, and customer allocation with respect to Occupant Safety Systems in the United States or for vehicles that were sold in the United States; (2) appeared before a grand jury in the DOJ's investigation into alleged antitrust violations with respect to Occupant Safety Systems; and/or (3) were disclosed to the DOJ as having knowledge or information relating to the DOJ's investigation into alleged antitrust violations with respect to Occupant Safety Systems. Neither Tokai Rika nor counsel for Tokai Rika shall be required to disclose to Settlement Class Counsel, pursuant to this Paragraph, the specific Government Entities to which each such current or former employee, director or officer of Tokai Rika was identified to or appeared before.

30. To the extent legally permissible and it has not already done so, within thirty (30) days of preliminary approval of this Agreement or contemporaneously with any production to the remaining non-settling plaintiffs in the Actions, whichever is earlier, Tokai Rika shall produce to Direct Purchaser Plaintiffs the following documents and data, except that Tokai Rika shall not be required to search for, or produce, any documents or data other than documents and data that have been, or will be, provided during discovery to any remaining non-settling plaintiffs in the Actions:

(a) All documents that were created in the ordinary course of business, and are within Tokai Rika's possession, custody or control, that were provided to or seized by the DOJ or any of the other Government Entities in connection with an investigation of price-fixing, bid-rigging, market allocation, and customer allocation of Occupant Safety Systems in the United States or for vehicles that were sold in the United States. This production shall include all English translations provided or seized. Tokai Rika will not identify which documents may have been

provided to any Government Entity or indeed which Government Entities may have or may be investigating Tokai Rika;

(b)  Transactional sales and cost data kept in the ordinary course of Tokai Rika's business, to the extent such data exists in Tokai Rika's electronic databases and is reasonably accessible, related to Tokai Rika's bids, price submissions and sales of Occupant Safety Systems sold directly to purchasers of Occupant Safety Systems in the United States for the period January 1, 2000 through December 31, 2014. Tokai Rika shall also provide reasonable assistance to Settlement Class Counsel in understanding the transactional sales and cost data produced, including, if appropriate, a reasonable number of communications with Direct Purchaser Plaintiffs' experts and between technical personnel;

(c)  Non-privileged documents that are reasonably accessible that are sufficient to show Tokai Rika's general methodology for determination of its prices and bids for the products comprising the Occupant Safety Systems that it sells, including pricing policies, formulas and guidelines, including documents concerning the relationship between prices charged or submitted to different direct purchasers or to the same direct purchaser for different models; and

(d)  Non-privileged documents concerning Occupant Safety Systems, collected and reviewed in connection with Tokai Rika's internal investigation, that are relevant to the allegations in the Complaints, or that have been identified by Tokai Rika as relating to or concerning a communication, meeting, or agreement regarding Occupant Safety Systems, by any employee, officer or director of Tokai Rika with any employee, officer or director of another manufacturer or seller of Occupant Safety Systems, but that were not provided to or seized by Government Entities.

31.     With respect to Paragraph 30 above, the parties acknowledge that Tokai Rika has already produced extensive documents responsive to Paragraph 30 and that additional responsive documents may not exist.  Tokai Rika will consider in good faith reasonable requests by Settlement Class Counsel for narrow, targeted follow-up.

32.     In making any production contemplated by this Agreement, Tokai Rika is entitled to withhold from production any Documents protected from disclosure by the attorney-client privilege, doctrine, or law.  In providing documents, Tokai Rika is not required to create a privilege log identifying the Documents withheld or otherwise provide Direct Purchaser Plaintiffs with identifying information regarding the Documents withheld; however, to the extent Tokai Rika has created or creates a privilege log in the Actions or any other Occupant Safety Systems action within 2:12-cv-00600, Tokai Rika shall provide Settlement Class Counsel with such privilege log.  No Document created in the ordinary course of business shall be withheld under claim of privilege if produced or made available to any Government Entity.  If any Document protected by the attorney-client privilege, attorney work-product protection or any other privilege is accidentally or inadvertently produced under this Paragraph, upon notice by Tokai Rika of such inadvertent production, the Document shall promptly be destroyed and/or returned to Tokai Rika, and its production shall in no way be construed to have waived any privilege or protection attached to such Document.  This Agreement, together with the Protective Order in the Actions, brings any inadvertent production by Tokai Rika within the protections of Federal Rule of Evidence 502(d), and Settlement Class Counsel will not argue that production to any person or entity made at any time suggests otherwise.  For the avoidance of doubt, Direct Purchaser Plaintiffs expressly agree that they will not seek any discovery, other than the Cooperation Materials, in the Actions from Tokai Rika or the Releasees after the Execution Date including but not limited to written discovery,

document discovery, or deposition discovery, unless the Agreement does not become final under Paragraph 17.

33.    In the event that Tokai Rika produces Documents or provides declarations or written responses to discovery to any Government Entity or party in the Actions or any other Occupant Safety Systems action within 2:12-cv-00600, concerning or relating to these Actions ("Relevant Production"), Tokai Rika shall produce all such Occupant Safety Systems Documents, declarations or written discovery responses to Direct Purchaser Plaintiffs contemporaneously with making the Relevant Production to the extent such Documents, declarations or written discovery responses have not previously been produced by Tokai Rika to Direct Purchaser Plaintiffs.  The production of relevant Documents shall include all non-privileged English translations, to the extent they exist.

(a)    Tokai Rika shall provide additional Cooperation to Settlement Class Counsel as set forth below.  All Cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided. This Agreement does not restrict Settlement Class Counsel from attending and/or participating in any depositions in this Actions or any other Occupant Safety Systems action within 2:12-cv-00600, to the extent Settlement Class Counsel's participation does not expand the time allotted for the deposition pursuant to applicable stipulations or orders in the Actions.  Tokai Rika will provide notice to Settlement Class Counsel of any proffer, witness interview or any deposition notice or subpoena issued to Tokai Rika in these Actions or any other Occupant Safety Systems action within 2:12-cv-00600 or to a current or former Tokai Rika director, officer or employee in these Actions or any other Occupant Safety Systems action within 2:12-cv-00600 promptly upon receipt (to the extent Tokai Rika is aware of such deposition notice or subpoena and actually receives same).

(b)     No earlier than ten (10) business days after preliminary approval of this Agreement, or on another date as agreed upon by counsel, and upon reasonable advance notice, counsel for Tokai Rika shall provide Settlement Class Counsel with an oral proffer (via phone or in person in Washington, DC or another location mutually agreed upon) of no more than five hours of the relevant facts known to it regarding documents, witnesses, meetings, communications, agreements with competitors, events, background information and any other relevant topics, to the extent not covered by privilege or other protections available under any applicable statute or United States law, relating to Direct Purchaser Plaintiffs' allegations of price-fixing, bid-rigging, market allocation, and customer allocation with respect to Occupant Safety Systems ("Attorney Proffer"). Thereafter, Tokai Rika's counsel will make themselves available for three reasonable follow-up conversations of no more than one hour each in connection with the Attorney Proffer, and will use reasonable efforts to respond to questions posed by Settlement Class Counsel.  It is understood that Tokai Rika has no obligation to seek new or additional information or documents from any of its employees, officers or directors in connection with the Attorney Proffer, witness interviews, or any of these follow-up conversations or otherwise; however, Tokai Rika will in good faith consider requests for new or additional information, documents or affidavits, and will produce such information, documents or affidavits, if the requests are reasonable and not overly burdensome on Tokai Rika.

(c)     Notwithstanding any other provision in this Agreement, Direct Purchaser Plaintiffs agree that they, Settlement Class Counsel and their experts shall maintain all statements made by Tokai Rika's counsel as "Highly Confidential - Outside Counsel Only," as said designation is described in the Protective Order in effect for these Actions (12-cv-00600, Doc. No. 77) and that they, Settlement Class Counsel and their experts shall not use the information so

received for any purpose other than the prosecution of the Direct Purchaser Plaintiffs' claims against other parties besides the Releasees in the Actions. The parties and their counsel further agree that any statements made by Tokai Rika's counsel in connection with and/or as part of this Agreement, including the Attorney Proffer referred to in Paragraph 33(b), shall be governed by Federal Rule of Evidence 408, and, otherwise, shall not be deemed admissible into evidence or to be subject to further discovery. Notwithstanding anything herein, and except as to Tokai Rika and any other Releasee, Settlement Class Counsel may use information contained in such statements in the prosecution of the Direct Purchaser Plaintiffs' claims in the Actions, and rely on such information to certify that, to the best of Settlement Class Counsel's knowledge, information and belief, such information has evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

(d)　Upon reasonable notice after preliminary approval of this Agreement, Tokai Rika shall use its best efforts to make available for interviews with Settlement Class Counsel or their experts, at a mutually agreed upon location or locations in the United States, up to a total of two (2) persons who are current or former directors, officers, and/or employees of Tokai Rika, who Settlement Class Counsel may select (in coordination with Other Settlement Class Counsel), and who would reasonably assist Direct Purchaser Plaintiffs in the prosecution of the Actions. Interviews shall each be limited to a total of seven (7) hours over one day. To the extent that the person to be interviewed requests an interpreter, interviews shall be limited to a total of thirteen (13) hours, which would occur over two (2) consecutive days at the request of the interviewee or interviewers, but for no more than seven (7) hours in any one day, unless otherwise agreed.

(e)　In addition to its Cooperation obligations set forth herein, Tokai Rika shall use its best efforts to produce through affidavit(s) or declaration(s) and/or at trial, in Settlement

Class Counsel's discretion and upon reasonable advance notice, a reasonable number of Tokai

Rika representatives qualified to authenticate, establish as business records, or otherwise establish

any other necessary foundation for admission into evidence of any of Tokai Rika's Documents

and transaction and/or cost data produced or to be produced, and, to the extent possible, any

Documents produced by Defendants or third-parties if authenticating witnesses are not available

from such Defendants or third-parties.  Settlement Class Counsel agree to use their best efforts to

obtain stipulations that would avoid the need to call Tokai Rika witnesses at trial for the purpose

of obtaining such evidentiary foundations.  In the event that Tokai Rika produces Documents or

provides declarations or written responses to discovery to any party in the Actions, Tokai Rika

shall produce all such Documents, declarations or written discovery responses to Direct Purchaser

Plaintiffs contemporaneously with making the production to the extent such Documents,

declarations or written discovery responses have not previously been produced by Tokai Rika to

Direct Purchaser Plaintiffs.

   (f)  Direct Purchaser Plaintiffs and Settlement Class Counsel agree they and

their experts will not use the information or Cooperation Materials provided by Tokai Rika or the

Releasees or their representatives under this Paragraph or any other paragraph in this Agreement

for any purpose other than the pursuit of the Direct Purchaser Plaintiffs' claims against other

parties besides the Releasees in the Actions, and will use it in the litigation consistent with the

Protective Order, except as provided herein, and will not use it beyond what is reasonably

necessary for the prosecution of the Direct Purchaser Plaintiffs' claims in the Actions or as

otherwise required by law.  While Direct Purchaser Plaintiffs may employ knowledge that they

have obtained from Tokai Rika's Cooperation under this Agreement in prosecuting their claims in

the Actions against other parties besides the Releasees, Direct Purchaser Plaintiffs, Settlement

Class Counsel and their experts shall, except as provided herein, treat all Cooperation Materials, documents, testimony and statements provided by Tokai Rika in accordance with the protections of the Protective Order in the Actions (12-cv-00600, Doc. No. 77) as if they had been produced in response to discovery requests and so designated, and shall not use Cooperation Materials, documents, testimony and statements for the prosecution of any other action.

 (g) Tokai Rika's obligations to provide Cooperation shall not be affected by the Release set forth in this Settlement Agreement. Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, Tokai Rika's obligations to provide Cooperation under this Agreement shall continue only until otherwise ordered by the Court, or the date that final judgment has been rendered in the Actions against all Defendants and such final judgment is no longer subject to appellate review, or the last remaining Defendant is dismissed with prejudice and such dismissal is no longer subject to appellate review, whichever occurs earlier.

34. In the event that this Agreement fails to receive Final Approval by the Court as contemplated in Paragraphs 16-17 of this Agreement, including final approval of the Settlement Class as defined in Paragraph 10, or in the event that it is rescinded by either party under any provision herein or otherwise fails to become effective, the parties agree that neither Direct Purchaser Plaintiffs nor Settlement Class Counsel shall be permitted to introduce into evidence against Tokai Rika or any other Releasee, at any hearing or trial, or in support of any motion, opposition or other pleading in the Actions or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Actions, any deposition, testimony, interview information, documents, or any other Cooperation Materials provided by Tokai Rika and/or the Releasees, their counsel, or any individual made available by Tokai Rika solely pursuant to Cooperation (as opposed to being obtained in discovery or from any other source or pursuant to

a court order). This limitation shall not apply to any documents or testimony obtained in discovery of Tokai Rika in which Settlement Class Counsel participates as part of the Actions. Notwithstanding anything contained herein, Direct Purchaser Plaintiffs and the Settlement Class are not relinquishing any rights to participate in discovery initiated by other plaintiffs in any Occupant Safety Systems action within 2:12-cv-00600 or to pursue discovery against Tokai Rika in the event that this Agreement fails to receive Final Approval by the Court as contemplated in Paragraphs 16-17 hereof, including final approval of the Settlement Class as defined in Paragraph 10, or in the event that it is terminated or rescinded by either party under any provision herein or otherwise fails to become effective.

35.     Tokai Rika need not respond to, or supplement prior responses to formal discovery requests made pursuant to the Federal Rules of Civil Procedure from Direct Purchaser Plaintiffs or otherwise participate in the Actions during the pendency of the Agreement, including responding to any document production and other discovery deadlines ordered in the Actions. Other than to enforce the terms of this Agreement, neither Tokai Rika nor Direct Purchaser Plaintiffs shall file motions against the other in this Actions during the pendency of the Agreement.

36.     Tokai Rika and Direct Purchaser Plaintiffs agree not to disclose publicly or to any other person the terms of this Agreement until it is submitted to the Court for preliminary approval.

37.     If Settlement Class Counsel believes that Tokai Rika or any current or former employee, officer or director of Tokai Rika has refused to use its best efforts to cooperate under the terms of this Agreement, Settlement Class Counsel shall meet and confer with Tokai Rika. Upon reaching an impasse in any meet and confer, Settlement Class Counsel may seek an Order from the Court compelling Tokai Rika to use its best efforts to provide such cooperation. Nothing in this provision shall limit in any way Tokai Rika's ability to defend the level of cooperation it

has provided or to defend its compliance with the terms of the Cooperation provisions in this Agreement.

G.      Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

38.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify a settlement class in accordance with the specific Settlement Class definition set forth in this Agreement, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 16 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Tokai Rika and the Direct Purchaser Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.  Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 49.  A modification or reversal on appeal of any amount of Settlement Class Counsel's fees or costs and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

39.     In the event that this Agreement does not become final, as set forth in Paragraph 17, or this Agreement otherwise is terminated pursuant this Agreement, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to Tokai Rika less only disbursements made, or obligations incurred in accordance with Paragraphs 22(d) and 24 of this Agreement.  Tokai Rika expressly reserves all of its rights and defenses if this Agreement does not become final.

40.     Further, and in any event, Direct Purchaser Plaintiffs and Tokai Rika agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and

discussions associated with it, including any Cooperation Materials, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by Tokai Rika, or the Releasees, to be used against Tokai Rika or the Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaints or any other pleading filed in the Actions or MDL Litigation, or by any person or entity in any other action, to be used against Tokai Rika or the Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Actions or in any other action or proceeding, against Tokai Rika or the Releasees. Nothing in this Paragraph shall prevent Direct Purchaser Plaintiffs from using and/or introducing into evidence Cooperation Materials produced pursuant to Section F. of this Agreement against any other Defendant in these Actions, but Direct Purchaser Plaintiffs may not use such Cooperation Materials against Tokai Rika or the Releasees in the Automotive Parts Antitrust Litigation No. 2:12-md-02311, or in any other action.

41. This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement in exchange for the payment of the Settlement Amount and Cooperation by Tokai Rika.

H. Miscellaneous.

42. Tokai Rika shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

43. This Agreement does not settle or compromise any claim by Direct Purchaser Plaintiffs or any other Settlement Class Member asserted in the Complaints or, if amended, any subsequent Complaint, against any Defendant or alleged co-conspirator other than the Releasees. All rights against such other Defendants or alleged co-conspirators are specifically reserved by

Direct Purchaser Plaintiffs and the Settlement Class. All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than the Releasees, for sales made by Tokai Rika and Tokai Rika's alleged illegal conduct, are specifically reserved by Direct Purchaser Plaintiffs and Settlement Class Members. Tokai Rika's sales to the Settlement Class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Actions as a potential basis for damage claims and shall be part of any joint-and-several liability claims against other current or future Defendants in the Actions or other persons or entities other than the Releasees. Tokai Rika and the other Releasees shall not be responsible for any payment to Direct Purchasers Plaintiffs and Settlement Class Members other than the Settlement Amount specifically agreed to in Paragraph 21 of this Agreement.

44.     The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Direct Purchaser Plaintiffs and Tokai Rika. This Agreement shall be governed by and interpreted according to the substantive laws of the state of Michigan without regard to its choice of law or conflict of laws principles. Tokai Rika will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

45.     This Agreement constitutes the entire, complete and integrated agreement among Direct Purchaser Plaintiffs and Tokai Rika pertaining to the settlement of the Actions against Tokai Rika, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between Direct Purchaser Plaintiffs and Tokai Rika in connection herewith. This Agreement may not be

modified or amended except in writing executed by Direct Purchaser Plaintiffs and Tokai Rika, and approved by the Court.

46.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Direct Purchaser Plaintiffs and Tokai Rika and the other Releasees.  Without limiting the generality of the foregoing, upon Final Approval of this Agreement each and every covenant and agreement made herein by Direct Purchaser Plaintiffs or Settlement Class Counsel or Tokai Rika respectively shall be binding upon all Settlement Class Members, Releasors and Releasees respectively.  The Releasees (other than the Tokai Rika entities which are parties hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

47.     This Agreement may be executed in counterparts by Direct Purchaser Plaintiffs and Tokai Rika, and a facsimile or imaged signature shall be deemed an original signature for purposes of executing this Agreement.

48.     Neither Direct Purchaser Plaintiffs nor Tokai Rika shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

49.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by  electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph), or letter by

overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

50. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.

Dated: January 29, 2018

*William H. London*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521

*Douglas Abrahams*

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

*signature*

Gregory P. Hansel
Randall B. Weill
Michael Smith
PRETI, FLAHERTY, BELIVEAU
& PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: (207) 791-3000
Facsimile: (207) 791-3111

33

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

*Interim Co-Lead Class Counsel and Settlement Class Counsel*

W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Ave, NW Suite 300
Washington, DC  20037
Telephone: (202) 663-7820
Facsimile: (202) 663-7849

*Attorney for Defendants Tokai Rika Co., Ltd., TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc., and TRQSS, Inc., f/k/a Quality Safety Systems Company*