**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **CASE NO. 12-MD-02311**<br>**HON. SEAN F. COX** |
| **In Re: OCCUPANT SAFETY SYSTEMS** | |
| **THIS RELATES TO:**<br>**ALL DIRECT PURCHASER ACTIONS** | **2:12-cv-00601-SFC-RSW**<br>**2:16-cv-10002-SFC-RSW** |

**MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH TRUSTEE OF THE REORGANIZED TK HOLDINGS TRUST AND FOR PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS**

Direct Purchaser Plaintiffs Beam's Industries, Inc. and Findlay Industries, Inc., hereby move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of their proposed settlement with Joseph J. Farnan, Jr., solely as Trustee (the "Trustee") of the Reorganized TK Holdings Trust (the "Trust") and for provisional certification of the TK Holdings Settlement Class. In support of this motion, Plaintiffs rely upon the accompanying memorandum of law, which is incorporated by reference herein.

The parties do not request a hearing for this motion. Counsel for the Trustee consents to this motion and to the entry of the proposed order preliminarily approving the proposed settlement and provisionally certifying the TK Holdings Settlement Class.

16439596.1

DATED: February 1, 2021

Respectfully submitted,

  /s/David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

***Interim Liaison Counsel for the Direct
Purchaser Plaintiff***

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300

***Interim Co-Lead Counsel for the Direct Purchaser Plaintiff***

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **CASE NO. 12-MD-02311**<br>**HON. SEAN F. COX** |
| **In Re: OCCUPANT SAFETY SYSTEMS** | |
| **THIS RELATES TO:**<br>**ALL DIRECT PURCHASER ACTIONS** | **2:12-cv-00601-SFC-RSW**<br>**2:16-cv-10002-SFC-RSW** |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH TRUSTEE OF THE REORGANIZED TK HOLDINGS TRUST AND FOR PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS**

16439596.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF ISSUES PRESENTED.......................................................... viii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................. ix

I.    INTRODUCTION ...................................................................................... 1

II.   BACKGROUND ....................................................................................... 1

III.  THE SETTLEMENT ................................................................................. 2

      A.    The Proposed Settlement Class.................................................... 4

      B.    The Settlement Amount ................................................................ 4

      C.    Release ........................................................................................... 4

IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
      WARRANTED............................................................................................ 5

      A.    The Governing Standards. ........................................................... 5

      B.    The Proposed Settlement Provides Valuable Benefits to the Class. ...................... 7

      C.    Consideration of the Final Approval Factors Supports Preliminary Approval of
            the Proposed Settlement................................................................ 7

            1.    The Class Representative and Class Counsel Have Adequately
                  Represented the Class, and the Settlement Was Reached at
                  Arm's Length. .................................................................... 9

            2.    The Relief Provided to the Class is Adequate. ...................... 11

                  a.    The Costs, Risks, and Delay of Trial and Appeal........... 12

                  b.    The Effectiveness of Any Proposed Method of Distributing Relief to
                        the Class, Including the Method of Processing Class Member
                        Claims, if Required. ............................................ 14

                  c.    The Terms of Any Proposed Award of Attorney's Fees, Including
                        Timing of Payment. .............................................. 15

                  d.    There Are No Separate Agreements Relating to the Proposed
                        Settlement. ...................................................... 16

            3.    The Settlement Treats Class Members Equitably Relative to
                  Each Other. ....................................................................... 16

            4.    The Settlement is Consistent with the Public Interest. ........... 16

V.    PROVISIONAL CERTIFICATION OF THE PROPOSED DIRECT PURCHASER  TK
      HOLDINGS SETTLEMENT CLASS IS WARRANTED............................... 17

      A.    The Proposed TK Holdings Settlement Class Satisfies Rule 23(a). .............. 18

i

|  |  | 1. | The Proposed TK Holdings Settlement Class is Sufficiently Numerous.  18 |

1.	The Proposed TK Holdings Settlement Class is Sufficiently Numerous. 18

2.	There are Common Questions of Law and Fact. ...................................... 19

3.	Plaintiffs' Claims are Typical of Those of the Settlement Class. ............. 20

4.	Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class. ...................................................................................... 21

B.	Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes. .................................................................................................... 22

1.	Common Legal and Factual Questions Predominate. .............................. 22

2.	A Class Action is Superior to Other Methods of Adjudication. ............... 23

VI.	PLAINTIFF IS NOT SEEKING AUTHORIZATION TO SEND NOTICE AT THIS TIME ............................................................................................................. 24

VII.	CONCLUSION ...................................................................................................... 25

16439596.1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ..................................................................................... 17, 22, 23

*Barry v. Corrigan,*
    79 F. Supp. 3d 712 (E.D. Mich. 2015) .............................................................. 19, 20

*Beale v. EdgeMark Financial Corp.,*
    1995 WL 631840 (N.D. Ill. Oct. 23, 1995) ............................................................. 25

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) .................................................................................. 22

*Berry v. Sch. Dist. of City of Benton Harbor,*
    184 F.R.D. 93 (W.D. Mich. 1998) ........................................................................... 11

*Carson v. Am. Brands, Inc.,*
    450 U.S. 79 ............................................................................................................. 11

*Date v. Sony Electronics, Inc.,*
    2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) .............................................. 14, 18, 20

*Dick v. Sprint Commc'ns,*
    297 F.R.D. 283 (W.D. Ky. 2014) ............................................................................. 10

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
    2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ....................................................... 19

*Ford v. Fed.-Mogul Corp.,*
    2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ...................................................... 12, 14

*Gautreaux v. Pierce,*
    690 F.2d 616 (7th Cir. 1982) ..................................................................................... 6

*Granada Invs. Inc. v. DWG Corp.,*
    962 F. 2d 1203 (6th Cir. 1992) ................................................................................ 17

*Griffin v. Flagstar Bancorp, Inc.,*
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ............................................... Passim

*Hadix v. Johnson,*
    322 F.3d 895 (6th Cir. 2003) ................................................................................... 16

iii

16439596.1

*Harris v. Reeves,*
  761 F. Supp. 382 (E.D. Pa. 1991) ........................................................................... 25

*Hillson v. Kelly Servs. Inc.,*
  2017 WL 279814 (E.D. Mich. 2017).......................................................................... 16

*Hoving v. Lawyers Title Ins. Co.,*
  256 F.R.D. 555 (E.D. Mich. 2009) ........................................................................... 22

*In re Am. Med. Sys., Inc.,*
  75 F.3d 1069 (6th Cir. 1996) .................................................................................... 19

*In re Auto. Refinishing Paint Antitrust Litig.,*
  617 F. Supp. 2d. 336 (E.D. Pa. 2007)...................................................................... 10

*In re Automotive Parts Antitrust Litig. (Wire Harness Cases),*
  2017 WL 469734 (E.D. Mich. Jan. 4, 2017) .............................................................. 6

*In re Automotive Parts Antitrust Litig.,* No. 12-md-02311,
  2016 WL 9280050 (E.D. Mich. Nov. 28, 2016).......................................................... 8

*In re Cardizem CD Antitrust Litig.,*
  218 F.R.D. 508 (E.D. Mich. 2003) ................................................................ 12, 13, 17, 24

*In re Cardizem CD Antitrust Litig,*
  200 F.R.D. 297 (E.D. Mich. 2007) ........................................................................... 24

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
  2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) .......................................................... 10

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,*
  248 F.R.D. 483 (E.D. Mich. 2008) ................................................................ 7, 13, 14, 17

*In re Flat Glass Antitrust Litig.,*
  191 F.R.D 472 (W.D. Pa. 1999) ........................................................................ 19, 20

*In re Flonase Antitrust Litig.,*
  284 F.R.D. 207 (E.D. Pa. 2012) ............................................................................... 24

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004)............................................................................... 10

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................... 15

iv

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ................................................................ 7

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ...................................................................... 24

*In re Packaged Ice Antitrust Litig.*,
  2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ............................................ 5, 6, 10

*In re Packaged Ice Antitrust Litig.*,
  2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ................................................ 10

*In re Polyurethane Foam Antitrust Litig.*,
  2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ................................................ 8, 9

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) ...................................................................... 22, 23

*In re Southeastern Milk Antitrust Litig.*, 2:07- CV-208,
  2013 WL 2155379 (E.D. Tenn. May17, 2013) ................................................ 10

*In re Southeastern Milk Antitrust Litig.*,
  2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ................................................ 22

*In re Telectronics Pacing Sys. Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) .................................................. 5, 6, 11, 14

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ................................................................ 18, 19, 20

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich. July 13, 2006) ...........................................Passim

*IUE-CWA v. General Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) .................................................................. 12

*Lessard v. City of Allen Park*,
  372 F. Supp. 2d 1007 (E.D. Mich. 2005) ........................................................ 12

*Marsden v. Select Medical Corp.*,
  246 F.R.D. 480 (E.D. Pa. 2007) .................................................................... 19

*Olden v. Gardner*,
  294 Fed. Appx. 210 (6th Cir. 2008) ................................................................ 12

v

*Paper Systems Inc. v. Mitsubishi Corp.*,
    193 F.R.D. 601 (E.D. Wisc. 2000) ........................................... 24

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) .................................................. 21

*Sheick v. Auto. Component Carrier LLC*,
    2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ...................... 12, 14

*Sheick v. Automotive Component Carrier LLC*,
    2010 WL 3070130 (E.D. Mich. Aug. 02, 2010) ...................... 9, 21

*Sims v. Pfizer, Inc.*,
    2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ........................ 11

*Smith v. MCI Telecoms Corp.*,
    1993 WL 142006 (D. Kan. April 28, 1993) ........................... 15

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) .......................................... 18, 19, 20

*Thacker v. Chesapeake Appalachia, LLC*,
    259 F.R.D. 262 (E.D. Ky. 2009) ...................................... 18

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ........................................... 8, 20

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ........................................... 11

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ...................................... 12, 13, 14

**Rules**

Fed. R. Civ. P. 23 ........................................................... 8, 9, 13, 24

Fed. R. Civ. P. 23(a) ..................................................... 18, 22

Fed. R. Civ. P. 23(a)(1) ............................................... 18, 19

Fed. R. Civ. P. 23(a)(2) ............................................... 19, 20

Fed. R. Civ. P. 23(a)(3) ............................................... 20

Fed. R. Civ. P. 23(a)(4) ............................................... 21

Fed. R. Civ. P. 23(b) ................................................................................................ 18, 22

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 18, 22, 23

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................... 25

Fed. R. Civ. P. 23(e) ........................................................................................... Passim

Fed. R. Civ. P. 23(e)(1)(A) ...................................................................................... 5, 24

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................... 5, 17

Fed. R. Civ. P. 23(e)(2) .................................................................................. 5, 7, 8, 9

Fed. R. Civ. P. 23(e)(3) ............................................................................................... 8

Fed. R. Civ. P. 23(g) .................................................................................................. 21

## STATEMENT OF ISSUES PRESENTED

1. Whether the proposed settlement between Direct Purchaser Plaintiffs and the Trustee of the Reorganized TK Holdings Trust, as set forth in the Stipulation and Settlement Agreement (Exhibit 1 hereto), is sufficiently fair, reasonable and adequate to warrant preliminary approval;

2. Whether the Court should provisionally certify a TK Holdings Settlement Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of this settlement only; and

3. Whether the Court should appoint Beam's Industries, Inc. and Findlay Industries, Inc. as the representatives for the proposed TK Holdings Settlement Class, and the law firms of Freed Kanner London & Millen LLC; Kohn, Swift & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios LLP; and Spector Roseman & Kodroff, P.C. as Class Counsel for the proposed TK Holdings Settlement Class ("Settlement Class Counsel").

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, ECF No. 497 (E.D. Mich.
June 20, 2016)

*Date v. Sony Electronics, Inc.*,
No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.,*
No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008)

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
497 F.3d 615 (6th Cir. 2007)

16439596.1

## I.      INTRODUCTION

Direct Purchaser Plaintiffs, on behalf of a settlement class of direct purchasers of Occupant Safety Systems in the United States, have reached a settlement with the bankruptcy trustee for Defendant TK Holdings Inc. The settlement agreement provides that Plaintiffs' claim in the TK Holdings Inc. bankruptcy shall be allowed as a general unsecured, non-priority claim in the amount of $84,000,000 under the reorganization plan.

Plaintiffs respectfully move this Court for an order preliminarily approving the proposed settlement with the bankruptcy trustee and provisionally certifying the TK Holdings Settlement Class. Plaintiffs will seek authorization to disseminate notice to members of the proposed Settlement Class pursuant to a plan to be submitted to the Court in a separate motion at a later date.

With this settlement, Direct Purchaser Plaintiffs have settled with all Defendants in this litigation.

## II.     BACKGROUND

In 2012 Direct Purchaser Plaintiffs filed a class action lawsuit on behalf of direct purchasers of Occupant Safety Systems.[1]  Plaintiffs allege that Defendants conspired to suppress and eliminate competition for Occupant Safety Systems by agreeing to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Occupant Safety Systems sold in the United States, in violation of federal antitrust laws. Plaintiffs further allege that as a result of the conspiracy, they and other direct purchasers of Occupant Safety Systems were injured by paying more for those products than they would have paid in the absence of the alleged illegal

---

[1] "Occupant Safety Systems" means seat belts, airbags, steering wheels or steering systems, safety electronic systems, and related parts and components.

1

conduct.  Plaintiffs seek recovery of treble damages, together with the costs of suit and attorney's fees.

In 2014 Direct Purchaser Plaintiffs reached a $35,516,800 settlement with Defendants Autoliv Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, and Autoliv Japan Ltd. (2:13-cv-00601, ECF No. 94-2).  Following notice and a hearing, the Court granted final approval of the Autoliv settlement in 2015.  (2:12-cv-00601, ECF No. 110).

In 2016 Direct Purchaser Plaintiffs reached a $6,500,000 settlement with Defendants TRW Deutschland Holding GmbH and TRW Automotive Holdings Corp. The Court granted final approval of the TRW settlement in 2015.  (2:13-cv-00601, ECF No. 130).

In 2017 Direct Purchaser Plaintiffs reached a $14,250,000 settlement with Defendants Tokai Rika Co., Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc.

In 2018 Direct Purchaser Plaintiffs reached a $4,000,000 settlement with Defendants Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., and TG Missouri Corp.

The Court granted final approval of the Tokai Rika and Toyoda Gosei settlements in 2018. (2:13-cv-00601, ECF Nos. 170 & 171).

## III.    THE SETTLEMENT

On June 25, 2017, TK Holdings Inc. ("TK Holdings")—along with certain affiliated entities—filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  (*In re TK Holdings Inc.*, Case No. 17-11375 (Bankr. D. Del.); Exhibit 1 at 2.)  On November 27, 2017, Direct Purchaser Plaintiffs filed a proof of claim in the bankruptcy court, denoted as Claim No. 3583.  *Id*. at 3. On February 21, 2018, the bankruptcy court entered an order confirming the Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors (the "Plan"). (Exhibit 1 at 3.)  The Plan established the Reorganized TK Holdings Trust (the "Trust") with Joseph J. Farnan, Jr., as Trustee (the "Trustee"), for the purpose

2

of reconciling certain claims, administering the Trust's assets, and making distributions to Trust beneficiaries, all as provided for under the Plan. *Id*.

On August 28, 2019, the Trustee and Direct Purchaser Plaintiffs (on behalf of themselves and a class of direct purchasers of Occupant Safety Systems) entered into a settlement agreement (Stipulation and Settlement Agreement Resolving Proof of Claim No. 3583 (the "Settlement Agreement") (Exhibit 1)), which allows for Direct Purchaser Plaintiffs' claim, Claim No. 3583, as a general unsecured, non-priority claim in the amount of $84,000,000 under the Plan. On September 13, 2019, the Bankruptcy Court approved the Settlement Agreement. *In re: TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. Del. Dec. 13, 2018), ECF No. 3996.  No appeal has been taken from the bankruptcy court's order, and the period to appeal has expired.

The Settlement Agreement was executed after arm's-length, good-faith negotiations between experienced and sophisticated counsel. During the negotiations, the merits of the respective parties' positions were discussed and evaluated.  As part of the settlement negotiations, the parties communicated extensively, and Settlement Class Counsel analyzed information provided to them by Defendants, relevant industry data, information disclosed in the related criminal litigation, and other pertinent information.

The settlement with the Trustee is the result of these good-faith negotiations, after factual investigation and legal analysis by experienced counsel, and is based upon the attorneys' full understanding of the strengths and weaknesses of their claims and defenses and their clients' respective positions.  The allowed claim of $84,000,000 is a meaningful settlement and a significant achievement in this litigation.  It reflects the costs, risks and delay of continued litigation against a defendant in bankruptcy.  Plaintiffs believe that the proposed settlement is fair, reasonable and adequate for the proposed Settlement Class.

16439596.1

The material terms of the proposed settlement are summarized below.

## A.      The Proposed Settlement Class

Direct Purchaser Plaintiffs and the Trustee seek certification of the TK Holdings Settlement

Class, which is defined as follows:

> All direct purchasers of Occupant Safety Systems in the United
> States from one or more of the Defendants or their co-conspirators
> (or their controlled subsidiaries, affiliates or joint ventures) from
> January 1, 2003, through June 25, 2017.

(Exhibit 1 ¶ 9.)

For purposes of the Settlement Class definition, the following entities are Defendants:

Autoliv Inc.; Autoliv SP Inc.; Autoliv BV & Co. KG; Autoliv Japan Ltd.; Takata Corp.; TK

Holdings Inc.; Tokai Rika; TRAM Inc.; TRW Automotive Holdings Corp.; TRW Deutschland

Holding GmbH; Toyoda Gosei Co Ltd.; Toyoda Gosei North America Corp.; and TG Missouri

Corp.

## B.      The Settlement Amount

The Settlement Amount is all monies received by Direct Purchaser Plaintiffs in connection

with the treatment of Claim No. 3583 as a general unsecured, non-priority claim in the amount of

$84,000,000 under the Plan.   The Settlement Agreement provides that the Trust shall make

distributions with respect to Claim No. 3583 at the same time and in the same manner as

distributions are made to other holders of allowed Class 6(d) claims.   (Settlement Agreement ¶

17.)[2]

## C.      Release

The Settlement Agreement provides for the release by Plaintiffs and the other members of

the Settlement Class of certain claims against TK Holdings, the Trust, and other "Releasees" (as

---

[2] The ultimate amount of the fund is unknown at present.

4

defined in the Settlement Agreement) concerning any conduct alleged in the Complaint and/or any act or omission relating to Occupant Safety Systems that were purchased in the United States directly from a Defendant. (Exhibit 1 ¶ 6.)

The release specifically excludes certain claims, including claims based upon indirect purchases of Occupant Safety Systems; claims based on negligence, personal injury, or product defects; claims relating to purchases of Occupant Safety Systems outside the United States; and claims concerning any product other than Occupant Safety Systems.  (Exhibit 1 ¶ 21.)

## IV.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS WARRANTED

### A.     The Governing Standards.

Approval of a class action settlement involves a three-step process: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement."  *In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, ECF No. 497, at 8 (E.D. Mich. June 20, 2016) (quoting *In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001));*see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010); *Manual For Complex Litig. (Fourth)* § 21.63 (2004).

Amendments to Rule 23 (effective December 1, 2018) have codified the preliminary approval process.  First, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."  Fed. R. Civ. P. 23(e)(1)(A). Notice "is justified by the parties' showing that the court will likely be able to: (1) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).   The amended Rule 23(e) preliminary approval procedure is

16439596.1

substantively the same as that previously approved in the Sixth Circuit and applied by this Court in prior *Auto Parts Litigation* settlements, namely a preliminary two-part determination that (1) the settlement is approvable and (2) the settlement class can be certified. *See, e.g., In re Automotive Parts Antitrust Litig. (Wire Harness Cases),* 2017 WL 469734, at *1 (E.D. Mich. Jan. 4, 2017) (granting preliminary approval upon making preliminary determinations that the settlement was approvable and a settlement class could be certified); *Packaged Ice*, 2010 WL 3070161 at *4 (determining "whether the proposed settlement has the 'potential' for final approval and … whether there is reason enough to notify class members and to proceed with a fairness hearing") (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982)).

The court "bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Telectronics,* 137 F. Supp. 2d at 1015 (quoting *Manual for Complex Litig. (Second)* §30.44 (1985)); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006). A proposed settlement falls within the "range of possible approval" under Rule 23(e) where there is a conceivable basis for presuming that it will meet the more rigorous standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable and adequate.

Fed. R. Civ. P. 23(e)(2); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,* 248 F.R.D. 483, 495-96 (E.D. Mich. 2008).  The final determination must await the final hearing where the fairness, reasonableness and adequacy of the settlement are assessed under the applicable final approval factors.  *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

> **B.**      **The Proposed Settlement Provides Valuable Benefits to the Class.**

The settlement provides for the treatment of Direct Purchaser Plaintiffs' claim in the TK Holdings bankruptcy as a general unsecured, non-priority claim in the amount of $84,000,000. The settlement amount constitutes a meaningful recovery and reflects consideration of information obtained through Settlement Class Counsel's factual investigation and legal analysis.

> **C.**      **Consideration of the Final Approval Factors Supports Preliminary Approval of the Proposed Settlement.**

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and finding that the settlement is "fair, reasonable, and adequate."  *See Packaged Ice*, 2011 WL 717519, at *8.  As noted above, the Court is not required at the preliminary approval stage to determine whether it will grant final approval of the proposed settlement, only that it is likely that it would.  Here, initial consideration of the final approval factors supports preliminary approval of the settlement.

The 2018 amendments to Rule 23(e) sets forth a list of factors for a court to consider before approving a proposed settlement as "fair, reasonable, and adequate."  The factors are whether:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account:
>
> > (i)      the costs, risks, and delay of trial and appeal;

16439596.1

      (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, courts in the Sixth Circuit have considered factors comparable to those in Rule 23(e)(2) in determining whether a settlement is approvable. *See In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 9280050, at *5 (E.D. Mich. Nov. 28, 2016) (considering "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest"). *Accord UAW v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007); *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013) ; *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), appeal dismissed (Dec. 4, 2015).  The Advisory Committee Notes to Rule 23 acknowledge these judicially created standards, explaining that the newly enumerated Rule 23(e) factors are "core concerns" in every settlement and were not intended to displace a court's consideration of other relevant factors in a particular case.  Fed. R. Civ. P. 23 advisory committee note (2018 Amendment).

Accordingly, Plaintiffs will address the "fair, reasonable and adequate" factors under Rule 23(e)(2) and the Sixth Circuit's and this Court's prior preliminary approval decisions.  A review of the factors supports preliminary approval.

**1. The Class Representative and Class Counsel Have Adequately Represented the Class, and the Settlement Was Reached at Arm's Length.**

The first two Rule 23(e)(2) factors (adequate representation by the class representative and class counsel and whether the settlement was reached at arm's length) are procedural and focus on the history and conduct of the litigation and settlement negotiations.  Fed. R. Civ. P. 23 Advisory Committee Note.  Relevant considerations may include the experience and expertise of plaintiff's counsel, the quantum of information available to counsel negotiating the settlement, the stage of the litigation and amount of discovery taken, the pendency of other litigation concerning the subject matter, the length of the negotiations, whether a mediator or other neutral facilitator was used, the manner of negotiation, whether attorney's fees were negotiated with the defendant and if so how they were negotiated and their amount, and other factors that may demonstrate the fairness of the negotiations. *Id.*

Plaintiffs and Settlement Class Counsel have adequately represented the proposed Settlement Class in connection with this settlement and the litigation in general. The Plaintiffs' interests are the same as those of the Settlement Class members, and Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the Direct Purchaser Plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated this settlement at arm's length with well-respected and experienced counsel for the Trustee.  There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.  *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26;  *Sheick v. Automotive Component Carrier LLC,* No. 09–14429, 2010 WL 3070130, at *19-20 (E.D. Mich. Aug. 02, 2010).  Settlements reached by experienced counsel that result from

arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07- CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336, 341 (E.D. Pa. 2007).

The negotiations that led to the settlement were at all times conducted at arm's length and took months to complete.  Plaintiffs obtained extensive information about the Occupant Safety Systems conspiracy through discovery, settlement-related cooperation from Defendants, and through Settlement Class Counsel's investigation.[3]  This information and Settlement Class Counsel's legal analysis allowed Settlement Class Counsel to evaluate the strengths and weaknesses of the legal case.  Based on this information, Settlement Class Counsel believe that the proposed settlement with the Trustee is fair, reasonable, and in the best interests of the Settlement Class, and their opinion supports both preliminary (and final) approval of the settlement.[4]

---

[3] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6.  The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.2004)). *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011) (absence of formal discovery not an obstacle to settlement approval).

[4] There was no negotiation of attorney's fees. At an appropriate time, Plaintiffs' counsel may decide to file a motion seeking an award attorney's fees and expenses.

Because the proposed settlement was negotiated at arm's length by experienced counsel knowledgeable about the facts and the law, consideration of this factor fully supports preliminary approval of the settlement.

### 2.   The Relief Provided to the Class is Adequate.

The relief provided to the class consists of the treatment of Direct Purchaser Plaintiffs' claim in the TK Holdings bankruptcy as a general unsecured, non-priority claim in the amount of $84,000,000.[5]  Settlement Class Counsel believe that this is adequate relief for the Settlement Class.

Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981).  There are two reasons for this.  First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits.  *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988).  Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *Telectronics,* 137 F. Supp. 2d at 1008-09 (citing *Manual (Third)* §30.42).  This is particularly true in the case of class actions.  *Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998).

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 11 (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013)). *Accord Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016).  A court's inquiry on final approval is whether the

---

[5] The amount of the fund is unknown at present.

16439596.1

proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich,* 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008).   This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

### a.   The Costs, Risks, and Delay of Trial and Appeal.

When considering the adequacy of the relief to the class in determining the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'"   *Sheick*, 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp*., 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford*, 2006 WL 1984363, at *21; *Ford v. Fed.-Mogul Corp*., No. 2:09-CV-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015).   These risks must be weighed against the settlement consideration: here, the treatment of Direct Purchaser Plaintiffs' claim in the TK Holdings bankruptcy as a general unsecured, non-priority claim in the amount of $84,000,000.

Settlement Class Counsel believe that the settlement is an excellent result.   Weighing the settlement's benefits against the risks and costs of continued litigation tilts the scale toward approval.   *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.   Plaintiffs are optimistic about the likelihood of ultimate success in this case, but success is not certain. As this Court has previously noted, success is not guaranteed, even in those instances where a settling

12

defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice. That is because, among other things, the DOJ is not required to prove class-wide impact or damages, both of which require complex and expensive expert analyses, and the outcome of litigating those issues is uncertain. *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 11.

The claims against the Trust are particularly uncertain given that TK Holdings is in bankruptcy. This court has found that a defendant's bankruptcy creates "significant risk to any ultimate recovery" for the class. *In re Delphi Corp. Sec.,* 248 F.R.D. 483, 497 (E.D. Mich. 2008); *see also In re Packaged Ice Antitrust Litig.,* No. 08-MDL-01952, 2012 U.S. Dist. LEXIS 162459, at *39 (E.D. Mich. Nov. 13, 2012) (finding that settlement with bankrupt defendant "falls within the range of reasonableness, fairness and adequacy required under Fed. R. Civ. P. 23" in light of, *inter alia,* "the multitude of factual and legal hurdles which are presented by [defendant's] recent bankruptcy").

The Trustee is represented by highly experienced and competent counsel. The Trustee undoubtedly would deny Plaintiffs' allegations of liability and damages and assert a number of defenses, and Plaintiffs believe the Trustee is prepared to defend this case through trial and appeal. Risk is inherent in any litigation, and this is particularly true with respect to class actions. While optimistic about the outcome of this litigation, Plaintiffs must acknowledge the risk that the Trustee could prevail with respect to certain legal or factual issues, which could reduce or eliminate any potential recovery.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (quoting *Vukovich,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which

13

are "inherently complex." *Telectronics,* 137 F. Supp. 2d at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Delphi*, 248 F.R.D. at 498. Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated this settlement at arm's length with well-respected and experienced counsel for the Trustee. Settlement Class Counsel believe that the proposed settlement eliminates the risks, expense and delay with respect to a recovery from the Trust and ensures a substantial payment to the Settlement Class. This factor also supports preliminary approval of the proposed settlement.

**b.  The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims, if Required.**

This case does not present any difficulties in identifying claimants or distributing settlement proceeds. Consistent with the practice in previously approved *Automotive Parts*

*Antitrust Litigation* direct purchaser settlements, Settlement Class Counsel presently intend to propose that the net settlement funds be distributed pro rata to approved claimants. Claims would be processed using a settlement claims administrator to review claim forms, to assist Settlement Class Counsel in making recommendations to the Court concerning the disposition of those claims, and to mail checks to approved claimants for their pro-rata shares of the net settlement funds.

As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Smith v. MCI Telecoms Corp.*, No. Civ. A. 87-2110-EEO, 1993 WL 142006, at *2 (D. Kan. April 28, 1993); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, §12.35, at 350 (4th ed. 2002) ("Newberg") (noting that pro-rata allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"). This Court, and numerous others, have approved similar pro-rata distribution plans. *See, e.g.,* 2:12-cv-00601, ECF No. 172; 2;12-cv-00101, ECF No. 572). This factor supports preliminary approval.

### c.  The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment.

The Settlement Agreement provides that attorney's fees shall be paid solely out of the settlement funds subject to court approval, and that final approval of the settlement is not contingent on the outcome of any petition for attorney's fees. (Exhibit 1 ¶ 29). Settlement Class Counsel may seek attorney's fees of approximately 30% of the settlement funds, consistent with previous fee petitions and awards approved by this Court in the *Automotive Parts Antitrust Litigation.* This factor supports preliminary approval.

15

**d. There Are No Separate Agreements Relating to the Proposed Settlement.**

The Settlement Agreement reflects all of the agreements and understandings relating to the proposed settlement, and there is no separate agreement that would affect the settlement amount, the eligibility of class members to participate in the settlement or exclude themselves from it, or the treatment of class member claims.  This factor is therefore neutral.

**3.     The Settlement Treats Class Members Equitably Relative to Each Other.**

Class members will be treated equitably relative to each other in terms of their eligibility for a pro-rata portion of the settlement funds and their right to opt out.  Likewise, each class member gives the same releases.

The Agreement contemplates that Settlement Class Counsel may seek an incentive award for the class representative, as has been done in other cases. Such awards are justified as an incentive and reward for the efforts that lead plaintiffs take on behalf of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). However, class representatives have already received an incentive award in this litigation and class counsel shall not be requesting any further awards for class representatives. The settlement was provided to the class representatives for their review and approval without any discussion of incentive awards, which evinces that the prospect of such an award was not the reason the class representatives approved it.  *Hillson v. Kelly Servs. Inc.*, 2017 WL 279814, at *6 (E.D. Mich. 2017).  Plaintiffs submit that this factor supports preliminary approval.

**4.     The Settlement is Consistent with the Public Interest.**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement

16

conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.,* 962 F. 2d 1203, 1205 (6th Cir. 1992). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12.  Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed settlement.  *Griffin*, 2013 WL 6511860, at *5.  This factor also supports approval.

Consideration of the above factors supports preliminary approval of the proposed settlement.  Settlement Class Counsel respectfully submit that the proposed settlement is in the best interests of the Settlement Class and should be preliminarily approved.

## V.    PROVISIONAL CERTIFICATION OF THE PROPOSED DIRECT PURCHASER TK HOLDINGS SETTLEMENT CLASS IS WARRANTED

Rule 23 as amended now explicitly requires the Court to determine whether it is likely to be able to certify the proposed settlement class for purposes of judgment on the settlement proposal.  Fed. R. Civ. P. 23(e)(1)(B). It is well established that a class may be certified for purposes of settlement.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 24; *In re Delphi Corp. Sec. Derivatives & ERISA Litig.,* 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and securities settlement classes in a case involving a bankrupt defendant and noting the court's earlier, preliminary approval of the settlement classes).  At this juncture, the Court need only decide that certification of the proposed TK Holdings Settlement Class is "likely" in order to justify sending notice to Settlement Class members.  Plaintiffs will later seek final approval of the Settlement Class for purposes of the settlement.  *See Ford*, 2006 WL 1984363, at *3, *18; *Cardizem,* 218 F.R.D. at 516-17.  As it did with its preliminary approval analysis, Plaintiffs will

address the factors for final certification here.  *See Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[6]

As demonstrated below, the Settlement Class meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes, and therefore it is likely that the Court will be able to certify the proposed TK Holdings Settlement Class.

**A.     The Proposed TK Holdings Settlement Class Satisfies Rule 23(a).**

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b).  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).  Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

**1.     The Proposed TK Holdings Settlement Class is Sufficiently Numerous.**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1). There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason.  *Whirlpool*, 722 F.3d at 852 (noting that a "substantial" number of class members satisfies numerosity).  Moreover, numerosity is not

---

[6] Paragraph 10 of the proposed Preliminary Approval Order provides that provisional certification of the Settlement Class will be without prejudice to the rights of any Defendant to contest certification of any other class proposed in these coordinated actions. *See Packaged Ice*, 2011 WL 717519, at *7.

determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, Settlement Class Counsel believe that there are at least hundreds of direct purchasers of Occupant Safety Systems, geographically dispersed throughout the United States.[7] Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

## 2.    There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation."  *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-cv-10620, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement."  *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS, § 18.05-15 (3d ed. 1992)).  Here, whether Defendants entered into an agreement to artificially fix prices of Occupant Safety Systems is a factual question common to all members of the Settlement Class because it is an essential element of proving an antitrust violation.  *See, e.g., Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 25.  Common legal questions include whether, if such an agreement was reached, Defendants violated the

---

[7] Notice of the settlements with Tokai Rika and Toyoda Gosei was mailed to 1,342 potential Settlement Class members.

antitrust laws and the impact on class members.  *Packaged Ice*, 2011 WL 717519, at *6 (holding commonality satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members").  "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members."  *Flat Glass*, 191 F.R.D. at 484.  Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.    Plaintiffs' Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members."  *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at *19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'"  *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Plaintiffs' claims arise from the same course of conduct as the claims of the other members of the proposed Settlement Class, namely, the Defendants' alleged violations of the antitrust laws. Plaintiffs and the Settlement Class are proceeding on the same legal claim and same alleged violation of Section 1 of the Sherman Antitrust Act.  *See UAW*, 497 F. 3d at 625; *Barry*, 2015 WL 136238, at *13.  Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

16439596.1

### 4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class.  "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel."  *Sheick*, 2010 WL 3070130, at *3 (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here.  The interests of the proposed representatives of the TK Holdings Settlement Class, Beam's Industries, Inc., and Findlay Industries, Inc., are aligned with those of other Settlement Class members.  Plaintiffs are direct purchasers of Occupant Safety Systems from one or more of the Defendants in the United States.  Plaintiffs and the other Settlement Class members claim that they were injured as a result of the alleged conspiracy and seek to prove that Defendants violated the antitrust laws.  Plaintiffs' interests are thus aligned with those of other members of the TK Holdings Settlement Class.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.[8] Settlement Class Counsel vigorously represented Plaintiffs and the Settlement Class in the settlement negotiations and have vigorously prosecuted this action.  Adequate representation under Rule 23(a)(4) is therefore satisfied.

---

[8] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman & Kodroff, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* direct purchaser cases. They submit that, for the same reasons that the Court appointed them to those positions, their appointment as Co-Lead Settlement Class Counsel is appropriate.

16439596.1

**B.     Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.**

In addition to satisfying Rule 23(a), Plaintiffs must show that the putative class falls under at least one of the three subsections of Rule 23(b).  Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "[1] questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… [2] a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

**1.     Common Legal and Factual Questions Predominate.**

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification."   *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *See, e.g., Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 27; *Scrap Metal*, 527 F.3d at 535; *Packaged Ice*, 2011 WL 717519, at 6; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010).  Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members'…. Accordingly, the court found that

22

the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied."  527 F.3d at 535 (emphasis in original).

In this case the same core set of operative facts and theory of liability apply across the Settlement Class.  As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Occupant Safety Systems is a question common to all Settlement Class members because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects.  *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6.  If Plaintiffs and the other members of the Settlement Class were to bring their own individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability.  Therefore, common proof of Defendants' violations of antitrust law will predominate.

### 2. A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.  Fed. R. Civ. P. 23(b)(3).

All Occupant Safety Systems litigation has been centralized in this Court.  If a Settlement Class member wants to control its own litigation, it can request exclusion from the Settlement Class.  Thus, consideration of factors (1) - (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a

trial of the case because the settlement will end the litigation without a trial. *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Class is not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."  *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)).  Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all Settlement Class members.  *See, e.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury.").  The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive.  *In re NASDAQ Market-Makers Antitrust Litig*., 169 F.R.D. 493, 527 (S.D.N.Y 1996).  Thus, class litigation is superior to the alternatives in this case.

## VI.    PLAINTIFF IS NOT SEEKING AUTHORIZATION TO SEND NOTICE AT THIS TIME

As recently amended, Rule 23(e) frames the preliminary approval inquiry as a decision about whether to notify the class about a settlement.  See Fed. R. Civ. P. 23(e)(1)(A) ("The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class").  Settlement Class Counsel are not seeking leave to disseminate notice at this time.  The 2018 Amendments to Rule 23 spell out the required contents of a class notice

16439596.1

and the factors a court must evaluate in determining whether the proposed notice is "the best notice that is practicable under the circumstances," but do not specify the timing of notice. Fed. R. Civ. P. 23(c)(2)(B). The timing of class notice is thus within the discretion of the Court. *Beale v. EdgeMark Financial Corp.*, No. 94-C-1890, 1995 WL 631840, at *4 (N.D. Ill. Oct. 23, 1995); *Harris v. Reeves*, 761 F. Supp. 382, 393 (E.D. Pa. 1991). At an appropriate time, Settlement Class Counsel will submit for Court approval the proposed forms of notices and plan for dissemination that will most likely hew very closely to the settlement class notices the Court has approved in prior Automotive Parts Antitrust Litigation direct purchaser settlements. Deferring notice will not prejudice the proposed Settlement Class members, who are not bound by any judgment or release until they have received notice and an opportunity to exclude themselves or object. Plaintiff respectfully requests the Court to grant preliminary approval of the proposed TK Holdings Settlement, but defer decisions about the content, methods, and timing of notice.

## VII.    CONCLUSION

For the foregoing reasons, Direct Purchaser Plaintiffs respectfully request that the Court grant preliminary approval of the settlement and provisionally certify the proposed TK Holdings Settlement Class.

DATED: February 1, 2021                      Respectfully submitted,


                                              /s/David H. Fink
                                             David H. Fink (P28235)
                                             Nathan J. Fink (P75185)
                                             FINK BRESSACK
                                             38500 Woodward Ave; Suite 350
                                             Bloomfield Hills, MI 48304
                                             Telephone: (248) 971-2500

                                             *Interim Liaison Counsel for the Direct Purchaser Plaintiff*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
  & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300

***Interim Co-Lead Counsel for the Direct Purchaser Plaintiff***

16439596.1

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2021, I electronically filed the foregoing paper with the

Clerk of the court using the ECF system which will send notification of such filing to all counsel

of record registered for electronic filing.

FINK BRESSACK

By: /s/Nathan J. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI  48304
Telephone: (248) 971-2500
nfink@finkbressack.com

27

16439596.1