# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **Master File No. 12-md-02311** **Honorable Sean F. Cox** |
| **IN RE: OCCUPANT SAFETY SYSTEMS** | |
| **THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER CASES** | **2:12-cv-00601-SFC-RSW** **2:16-cv-10002-SFC-RSW** |

## DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH TRUSTEE OF THE REORGANIZED TK HOLDINGS TRUST AND PROPOSED PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS

Direct Purchaser Plaintiffs Beam's Industries, Inc. and Findlay Industries, Inc., hereby move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlement with Joseph J. Farnan, Jr., solely as Trustee of the Reorganized TK Holdings Trust. In support of this motion, Plaintiffs rely on the accompanying memorandum of law, which is incorporated by reference herein.

DATED: July 18, 2022

Respectfully submitted,

 /s/David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
    & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
    & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 238-1700

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | : : : | **Master File No. 12-md-02311** **Honorable Sean F. Cox** |
| **IN RE: OCCUPANT SAFETY SYSTEMS** | : : : : | |
| **THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER CASES** | : : : | **2:12-cv-00601-SFC-RSW** **2:16-cv-10002-SFC-RSW** |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH TRUSTEE
OF THE REORGANIZED TK HOLDINGS TRUST AND PROPOSED
<u>PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

STATEMENT OF ISSUES PRESENTED.......................................................... viii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................ ix

INTRODUCTION AND PROCEDURAL BACKGROUND....................................... 1

I.      STATUS OF NOTICE PROCESS ............................................. 3

II.     TERMS OF THE SETTLEMENT AGREEMENT ........................................... 4

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ................................................ 5

        A.      The Governing Standards ........................................................ 5

        B.      The Proposed Settlement is Fair, Reasonable, and Adequate................................ 6

                1.      The Class Representatives and Class Counsel Have Adequately Represented the TK Holdings Settlement Class, and the Settlement Was Reached at Arm's Length. .......................... 7

                2.      The Relief Provided to the Settlement Class is Adequate. ........................ 9

                        a.      The Costs, Risks, and Delay of Trial and Appeal............................ 10

                        b.      The Effectiveness of Any Proposed Method of Distributing Relief to the Settlement Class, Including the Method of Processing Class Member Claims, if Required............................ 13

                        c.      There Are No Separate Agreements Relating to the Proposed Settlement ........................................ 14

                3.      The Settlement Treats Class Members Equitably Relative to Each Other. ...... 14

                4.      The Settlement is Consistent with the Public Interest. ..................... 14

IV.     NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS ................................................................ 15

VI.     CERTIFICATION OF THE TK HOLDINGS SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE ............ 18

        A.      The Proposed TK Holdings Settlement Class Satisfies Rule 23(a). ..................... 19

                1.      The TK Holdings Settlement Class is Sufficiently Numerous. ............... 19

2.    There are Common Questions of Law and Fact. ...................................... 20

3.    Plaintiffs' Claims are Typical of Those of the Settlement Class. ............. 21

4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class. .......................................................................................... 21

B.    Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes. ........................................................................................................... 22

1.    Common Legal and Factual Questions Predominate. ............................... 23

2.    A Class Action is Superior to Other Methods of Adjudication. ............... 24

VII.   CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor,*
 521 U.S. 591 (1997) ................................................................................. 18, 23, 24

*Barry v. Corrigan,*
 2015 WL 136238 (E.D. Mich. Jan 9, 2015) ................................................... 20, 21

*Beattie v. CenturyTel, Inc.,*
 511 F.3d 554 (6th Cir. 2007) ................................................................................ 23

*Berry v. Sch. Dist. of City of Benton Harbor,*
 184 F.R.D. 93 (W.D. Mich. 1998) ....................................................................... 10

*Carson v. Am. Brands, Inc.,*
 450 U.S. 79 (1981) ................................................................................................. 9

*Date v. Sony Electronics, Inc.,*
 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) ......................................... 12, 19, 21

*Dick v. Sprint Commc'ns,*
 297 F.R.D. 283 (W.D. Ky. 2014) ....................................................................... 5, 8

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ................................................... 20

*Ford v. Fed.-Mogul Corp.,*
 2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ................................................... 10, 12

*Granada Invs. Inc. v. DWG Corp.,*
 962 F. 2d 1203 (6th Cir. 1992) ............................................................................. 14

*Griffin v. Flagstar Bancorp, Inc.,*
 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ............................................. Passim

*Hoving v. Lawyers Title Ins. Co.,*
 256 F.R.D. 555 (E.D. Mich. 2009) ...................................................................... 22

*In re Am. Med. Sys., Inc.,*
 75 F.3d 1069 (6th Cir. 1996) ............................................................................... 20

*In re American Bank Note Holographics, Inc.,*
 127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................. 17

*In re Auto. Refinishing Paint Antitrust Litig.*,
   617 F. Supp. 2d. 336 (E.D. Pa. 2007) ................................................................. 8

*In re Automotive Parts Antitrust Litig.*, No. 12-md-02311,
   2016 WL 9280050 (E.D. Mich. Nov. 28, 2016) ................................................. 6

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ........................................................... Passim

*In re Cardizem CD Antitrust Litig*,
   200 F.R.D. 297 (E.D. Mich. 2007) .................................................................... 24

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) .................................................. 8

*In re Delphi Corp.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ............................................................. 11, 12

*In re Flat Glass Antitrust Litig.*,
   191 F.R.D 472 (W.D. Pa. 1999) ................................................................. 20, 21

*In re Flonase Antitrust Litig.*,
   284 F.R.D. 207 (E.D. Pa. 2012) ....................................................................... 25

*In re Flonase Antitrust Litig.*,
   291 F.R.D. 93 (E.D. Pa. 2013) ......................................................................... 16

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................... 9

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ................................................................. 13, 16

*In re Insurance Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (E.D. Pa. 2013) ....................................................................... 15

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y 1996) ....................................................................... 25

*In re Packaged Ice Antitrust Litig.*,
   2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ........................................... Passim

*In re Packaged Ice Antitrust Litig.*,
   2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ........................................ 9, 10, 16

iv

*In re Polyurethane Foam Antitrust Litig.*,
   2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ........................................................... 7

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008) ............................................................................... 22, 23

*In re Southeastern Milk Antitrust Litig.*, 2:07-cv-208,
   2013 WL 2155379 (E.D. Tenn. May 17, 2013) ..................................................... 8

*In re Southeastern Milk Antitrust Litig.*,
   2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ...................................................... 23

*In re Vitamins Antitrust Litig.*,
   2000 WL 1737867 (D. D.C. Mar. 31, 2000) ......................................................... 17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ........................................................................ 19, 20, 21

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
   2006 WL 1984363 (E.D. Mich. July 13, 2006) ............................................... Passim

*IUE-CWA v. General Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006) ................................................................... 5, 10

*Law v. National Collegiate Athletic Ass'n.*,
   108 F. Supp. 2d 1193 (D. Kan. 2000) .................................................................. 16

*Lessard v. City of Allen Park*,
   372 F. Supp. 2d 1007 (E.D. Mich. 2005) ............................................................. 10

*Marsden v. Select Medical Corp.*,
   246 F.R.D. 480 (E.D. Pa. 2007) ........................................................................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .............................................................................................. 15

*Olden v. Gardner*,
   294 Fed. Appx. 210 (6th Cir. 2008) ..................................................................... 10

*Paper Systems Inc. v. Mitsubishi Corp.*,
   193 F.R.D. 601 (E.D. Wisc. 2000) ....................................................................... 24

*Prandin Direct Purchaser Antitrust Litig.*,
   2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) .................................................... 17

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) .................................................................................. 21

*Sheick v. Auto. Component Carrier LLC*,
   2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ............................................ 5, 10, 12

*Sheick v. Automotive Component Carrier LLC*,
   2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) .................................................. 8, 21

*Sims v. Pfizer, Inc.*,
   2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ...................................................... 10

*Smith v. MCI Telecoms Corp.*,
   1993 WL 142006 (D. Kan. April 28, 1993) .................................................... 13, 16

*Sprague v. General Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ........................................................... 19, 20, 21

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ....................................................................... 5, 16

*Thacker v. Chesapeake Appalachia, LLC*,
   259 F.R.D. 262 (E.D. Ky. 2009) ........................................................................ 18

*UAW v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ................................................................ 5, 7, 15, 21

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) .............................................................................. 9

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ..................................................................... 10, 12

**Statutes**

28 U.S.C. § 1715 ......................................................................................................... 3

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................Passim

Fed. R. Civ. P. 23(a) ............................................................................................ 19, 22

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 19

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 20, 21

vi

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 21

Fed. R. Civ. P. 23(a)(4) ................................................................................... 21, 22

Fed. R. Civ. P. 23(b) ...................................................................................... 19, 22

Fed. R. Civ. P. 23(b)(3) ................................................................................ Passim

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 15

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 15

Fed. R. Civ. P. 23(c)(3) ...................................................................................... 15

Fed. R. Civ. P. 23(e) ............................................................................... 6, 7, 15

Fed. R. Civ. P. 23(e)(1) ...................................................................................... 15

Fed. R. Civ. P. 23(e)(1)(A) ................................................................................... 3

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................... 3

Fed. R. Civ. P. 23(e)(2) ................................................................................ 3, 6, 7

Fed. R. Civ. P. 23(e)(3) ......................................................................................... 6

Fed. R. Civ. P. 23(g) .......................................................................................... 22

## STATEMENT OF ISSUES PRESENTED

1.    Whether the proposed settlement in *In Re: Occupant Safety Systems* between Direct Purchaser Plaintiffs Beam's Industries, Inc. and Findlay Industries, Inc. (together, "Plaintiffs") and Joseph J. Farnan, Jr., solely as Trustee of the Reorganized TK Holdings Trust ("Settling Defendant"), as set forth in the Settlement Agreement between Plaintiffs and Settling Defendant, is fair, reasonable, and adequate, and whether the Court should approve the settlement under Fed. R. Civ. P. 23;

2.    Whether the Court should certify the TK Holdings Settlement Class for purposes of the settlement only; and

3.    Whether the Court should approve the proposed plan for distribution of the proceeds of the settlement with the Settling Defendant.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.,*
    12-MD-02311, 2:12-cv-00103, ECF No. 497 (E.D. Mich. June 20, 2016)

*Date v. Sony Electronics, Inc.*,
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.,*
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008)

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950)

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007)

Fed. R. Civ. P. 23(c)(2)(B)

Fed. R. Civ. P. 23(e)(1), (e)(2)

## INTRODUCTION AND PROCEDURAL BACKGROUND

Direct Purchaser Plaintiffs Beam's Industries, Inc. and Findlay Industries, Inc., on behalf of a Settlement Class comprised of direct purchasers of Occupant Safety Systems, have reached a settlement with the Settling Defendant. In 2012, Direct Purchaser Plaintiffs filed a class action lawsuit on behalf of direct purchasers of Occupant Safety Systems.[1]  Plaintiffs allege that Defendants conspired to suppress and eliminate competition for Occupant Safety Systems by agreeing to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Occupant Safety Systems sold in the United States, in violation of federal antitrust laws. Plaintiffs further allege that as a result of the conspiracy, they and other direct purchasers of Occupant Safety Systems were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct.

Settlements with all Defendants other than TK Holdings Inc., totaling more than $60.2 million, have previously been approved by the Court, and there have been two settlement fund distributions. Direct Purchaser Plaintiffs, on behalf of a settlement class of direct purchasers of Occupant Safety Systems in the United States (the "TK Holdings Settlement Class"), have now reached a settlement with Joseph J. Farnan, Jr., solely as Trustee of the Reorganized TK Holdings Trust, the bankruptcy trustee for Defendant TK Holdings Inc. (the "TK Holdings Trustee"). On June 25, 2017, TK Holdings Inc. – along with certain affiliated entities – filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). *In re TK Holdings Inc.*, Case No. 17-11375 (Bankr. D. Del.). On November 27, 2017, Direct Purchaser Plaintiffs filed a proof of claim in the bankruptcy court, denoted as Claim No. 3583. *Id.* at 3. On

---

[1] "Occupant Safety Systems" means seat belts, airbags, steering wheels or steering systems, safety electronic systems, and related parts and components.

February 21, 2018, the bankruptcy court entered an order confirming the Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors (the "Plan"). The Plan established the Reorganized TK Holdings Trust (the "Trust") with the TK Holdings Trustee for the purpose of reconciling certain claims, administering the Trust's assets, and making distributions to Trust beneficiaries, all as provided for under the Plan. *Id.* The settlement agreement with TK Holdings provides that Plaintiffs' claim in the TK Holdings Inc. bankruptcy shall be allowed as a general unsecured, non-priority claim in the amount of $84,000,000[2] under the reorganization plan. By Order dated February 8, 2021, the Court preliminarily approved the proposed settlement, and provisionally certified the TK Holdings Settlement Class. ECF No. 182.

In addition to seeking final approval of the settlement, Plaintiffs seek authorization by the Court to distribute the TK Holdings Settlement Fund to members of the Settlement Class. Settlement Class Counsel is not seeking an award of attorneys' fees, reimbursement of litigation expenses, or service awards to the Class Representatives.[3]

For the reasons set forth herein, Plaintiffs respectfully submit that the proposed settlement is fair, reasonable, and adequate, and should be approved by the Court. Settlement Class Counsel also request that the Court approve the plan for distribution of the TK Holdings Settlement Fund. A Proposed Order and Final Judgment agreed to by Plaintiffs and the Settling Defendant, and a proposed order approving the proposed plan for distribution, will be submitted to the Court prior to the Fairness Hearing.

---

[2] It is Plaintiffs' understanding that the final calculation of the class's unsecured, non-priority claim under the reorganization plan is likely to be in the low six figures.

[3] Plaintiffs previously received service awards in this case.

## I.    STATUS OF NOTICE PROCESS

Recent amendments to Rule 23 (effective December 1, 2018) require that "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of [a proposed settlement] to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice "is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). By Orders dated May 24, 2022, the Court authorized the Plaintiffs to disseminate notice of the proposed TK Holdings settlement, the fairness hearing, and related matters to the TK Holdings Settlement Class (the "Notice Orders"). (2:12-cv-00601, ECF No. 185).

Pursuant to the Notice Orders, on June 20, 2022, 1,331 copies of the Notice of Proposed Settlement of Direct Purchaser Class Action with the TK Holdings Trustee and Hearing on Approval of Proposed Settlement and Plan of Distribution of the Settlement Fund, and Claim Form (the "Notice," attached as Exhibit 1) were mailed, postage prepaid, to all potential members of the TK Holdings Settlement Class identified by Defendants. Further, on June 27, 2022, a Summary Notice of Proposed Settlement of Direct Purchaser Class Action with the TK Holdings Trustee and Hearing on Approval of Proposed Settlement and Plan of Distribution of the Settlement Fund (the "Summary Notice") was published in *Automotive News*; additionally, an Informational Press Release was issued nationwide via PR Newswire's "Auto Wire," which targets auto industry trade publications. Finally, a copy of the Notice was (and remains) posted online at www.autopartsantitrustlitigation.com.[4]

---

[4] Counsel for the Trustee has informed Settlement Class Counsel that their clients fulfilled their obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005"), by disseminating the requisite notice to the appropriate federal and state officials.

The deadline for submission of objections to the proposed settlement and the proposed plan of distribution and for requests for exclusion from the Settlement Class, is August 8, 2022. To date, there have been no objections, or any requests for exclusion. Prior to the final fairness hearing, Settlement Class Counsel will file with the Court a report on objections (if any) and opt-outs, after the applicable deadlines have passed.

## II.    TERMS OF THE SETTLEMENT AGREEMENT

The Settling Defendant and Plaintiffs (on behalf of themselves and a class of direct purchasers of Occupant Safety Systems) entered into a settlement, which allows Plaintiffs' claim as a general unsecured, non-priority claim in the amount of $84,000,000 under the Plan. In exchange for the settlement payment, the proposed settlement provides, *inter alia,* for the release by Plaintiffs, and the other Settlement Class members, of "Released Claims" against the Settling Defendant and other "Releasees" (as defined in the Settlement Agreement). The Released Claims are antitrust and similar claims arising from the conduct alleged in the Occupant Safety Systems Complaint. The releases specifically exclude certain claims against the Settling Defendant, including claims: based upon indirect purchases of Occupant Safety Systems; based on negligence, personal injury, or product defects; relating to purchases of Occupant Safety Systems outside the United States; and concerning any products other than Occupant Safety Systems.

Moreover, all the Settling Defendant's sales to TK Holdings Settlement Class members remain in the cases as a potential basis for joint and several liability and damages against other current or future Defendants in the action.

Plaintiffs believe that the proposed settlement is fair, reasonable, and adequate to the TK Holdings Settlement Class. The Settlement Agreement was consummated only after extensive arm's-length negotiations between experienced and sophisticated counsel. They are the result of good faith negotiations, after factual investigation and legal analysis by experienced counsel, and

are based upon the attorneys' full understanding of the strengths and weaknesses of their respective positions. Plaintiffs respectfully submit that the settlement merits final approval.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.   The Governing Standards

A court has broad discretion in deciding whether to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007). In exercising this discretion, courts give considerable weight and deference to the views of experienced counsel as to the merits of an arm's-length settlement. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that a judge reviewing a settlement should not "substitute his or her judgment for that of the litigants and their counsel." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). Due to the uncertainties and risks inherent in any litigation, courts take a common-sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *15 (E.D. Mich. Oct. 18, 2010) (citation omitted). Moreover, a district court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

### B.     The Proposed Settlement is Fair, Reasonable, and Adequate

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and on finding that the settlement is "fair, reasonable, and adequate." *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011). The 2018 amendments to Rule 23(e) set forth a list of factors for a court to consider before approving a proposed settlement. The factors are whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)     the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, courts in the Sixth Circuit have considered factors comparable to those in Rule 23(e)(2) in determining whether a settlement should be approved. *See In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 9280050, at *5 (E.D. Mich. Nov. 28, 2016) (considering (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or

6

collusion; and (7) the public interest). *Accord UAW*, 497 F.3d at 631; *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-MD-2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), appeal dismissed (Dec. 4, 2015). The Advisory Committee Notes to Rule 23 acknowledge these judicially created standards, explaining that the newly enumerated Rule 23(e) factors are "core concerns" in every settlement and were not intended to displace a court's consideration of other relevant factors in a particular case. Fed. R. Civ. P. 23 Advisory Committee Note (2018 Amendment).

As discussed more fully below, the TK Holdings Settlement is fair, reasonable, and adequate under the relevant criteria, and should be approved under Rule 23(e)(2).

### 1. The Class Representatives and Class Counsel Have Adequately Represented the TK Holdings Settlement Class, and the Settlement Was Reached at Arm's Length.

The first two factors of Rule 23(e)(2) (adequate representation by the class representative and class counsel and whether the settlement was reached at arm's length) are procedural and focus on the history and conduct of the litigation and settlement negotiations. Fed. R. Civ. P. 23 Advisory Committee Note. Relevant considerations may include the experience and expertise of plaintiff's counsel, the quantum of information available to counsel negotiating the settlement, the stage of the litigation and amount of discovery taken, the pendency of other litigation concerning the subject matter, the length of the negotiations, whether a mediator or other neutral facilitator was used, the manner of negotiation, whether attorney's fees were negotiated with the defendant and if so, how they were negotiated and their amount, and other factors that may demonstrate the fairness of the negotiations. *Id.*

The Plaintiffs and Settlement Class Counsel have adequately represented the proposed TK Holdings Settlement Class in connection with the settlement and the litigation in general. Plaintiffs' interests are the same as those of the TK Holdings Settlement Class members, and Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated this settlement at arm's length with well-respected and experienced counsel for the Settling Defendant. There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick v. Automotive Component Carrier LLC,* No. 09-14429, 2010 WL 3070130, at *19-20 (E.D. Mich. Aug. 2, 2010). Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-cv-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336, 341 (E.D. Pa. 2007).

The negotiations that led to the settlement were conducted at arm's length and took months to complete. Plaintiffs obtained extensive information about the Occupant Safety Systems conspiracy through discovery, settlement-related cooperation from Defendants, and through

Settlement Class Counsel's investigation.[5] This information and Settlement Class Counsel's legal analysis allowed Settlement Class Counsel to evaluate the strengths and weaknesses of the legal case.

Because the proposed settlement was negotiated at arm's length by experienced counsel knowledgeable about the facts and the law, consideration of these factors fully supports final approval of the settlement.[6]

### 2. The Relief Provided to the Settlement Class is Adequate.

The relief provided to the TK Holdings Settlement Class consists of Plaintiffs' claim in the TK Holdings Inc. bankruptcy being allowed as a general unsecured, non-priority claim in the amount of $84,000,000 under the reorganization plan. Settlement Class Counsel believe that this is adequate relief for the Settlement Class.

Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *Telectronics,* 137 F. Supp. 2d at 1008-09 (citing *Manual for Complex Litigation*

---

[5] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor. *Packaged Ice,* 2010 WL 3070161, at *5-6. The "question is whether the parties had adequate information about their claims." *Griffin,* 2013 WL 6511860, at *3 (quoting *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 458 (S.D.N.Y. 2004)). *Accord In re Packaged Ice Antitrust Litig.,* No. 08-MD-01952, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011) (absence of formal discovery not an obstacle to settlement approval).

[6] There was no negotiation of attorneys' fees and Settlement Class Counsel is not seeking attorneys' fees with respect to this settlement.

*(3d ed.)* § 30.42). This is particularly true in the case of class actions. *Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998).

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, ECF No. 497, at 11 (E.D. Mich. June 20, 2016) (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013)). *Accord Sims v. Pfizer, Inc.*, No. 1:10-cv-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016). A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich,* 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

### a. The Costs, Risks, and Delay of Trial and Appeal

When considering the adequacy of the relief to the class in determining the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford*, 2006 WL 1984363, at *21; *Ford v. Fed.-Mogul Corp.*, No. 2:09-cv-14448, 2015 WL 110340, at *6 (E.D.

Mich. Jan. 7, 2015). These risks must be weighed against the settlement consideration, which will bring this case to a close with more than $60 million in total settlements.

Settlement Class Counsel believe that the settlement is a satisfactory result. Weighing the settlement's benefits against the risks and costs of continued litigation tilts the scale toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9. Plaintiffs are optimistic about the likelihood of ultimate success in this case, but success is not certain. As this Court has previously noted, success is not guaranteed even in those instances where a settling defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice. That is because, among other things, the DOJ is not required to prove class-wide impact or damages, both of which require complex and expensive expert analyses, and the outcome of litigating those issues is uncertain. *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 11.

The claims against the Trust are particularly uncertain given that TK Holdings is in bankruptcy. This court has found that a defendant's bankruptcy creates "significant risk to any ultimate recovery" for the class. *In re Delphi Corp. Sec.,* 248 F.R.D. 483, 497 (E.D. Mich. 2008); see also *In re Packaged Ice Antitrust Litig.,* No. 08-MDL-01952, 2012 U.S. Dist. LEXIS 162459, at *39 (E.D. Mich. Nov. 13, 2012) (finding that settlement with bankrupt defendant "falls within the range of reasonableness, fairness and adequacy required under Fed. R. Civ. P. 23" in light of, inter alia, "the multitude of factual and legal hurdles which are presented by [defendant's] recent bankruptcy").

The Trustee is represented by highly experienced and competent counsel. The Trustee undoubtedly will deny Plaintiffs' allegations of liability and damages and assert numerous defenses. Plaintiffs believe the Trustee is prepared to defend this case through trial and appeal. Risk is inherent in any litigation, and this is particularly true with respect to class actions. So, while

11

optimistic about the outcome of this litigation, Plaintiffs must acknowledge the risk that the Trustee could prevail with respect to certain legal or factual issues, which could reduce or eliminate any potential recovery.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (quoting *Vukovich,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. 2d at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

As the proposed settlement with the Settling Defendant has not yet been finally approved, it is not appropriate to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation as Defendants could seek to use any such disclosures against Plaintiffs going forward. Settlement Class Counsel believe that at this point it is sufficient to state that complex antitrust litigation of this scope has certain inherent risks that the settlement at least partially negates.

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Delphi*, 248 F.R.D. at 498. Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922-23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated the settlement at arm's length with well-respected and experienced counsel for the Settling Defendants. Settlement Class Counsel believe that the proposed settlement eliminates the risks, expense, and delay with respect to a recovery from the Settling Defendant and ensures a payment to the TK Holdings Settlement Class. This factor also supports final approval of the proposed settlement.

### b. The Effectiveness of Any Proposed Method of Distributing Relief to the Settlement Class, Including the Method of Processing Class Member Claims, if Required

This case does not present any difficulties in identifying claimants or distributing settlement proceeds. Consistent with the practice in previously approved *Automotive Parts Antitrust Litigation* direct purchaser settlements, Settlement Class Counsel presently intend to propose that the net settlement funds be distributed *pro rata* to approved claimants. *See* Section V., *infra*. Claims will be processed using a settlement claims administrator to review claim forms, to assist Settlement Class Counsel in making recommendations to the Court concerning the disposition of those claims, and to mail checks to approved claimants for their pro-rata shares of the net settlement funds.

Generally, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Smith v. MCI Telecoms Corp.*, No. Civ. A. 87-2110-EEO, 1993 WL 142006, at *2 (D. Kan. April 28, 1993); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 12.35, at 350 (4th ed. 2002) ("Newberg") (noting that pro-rata allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of

13

purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"). This Court, and numerous others, have approved similar pro-rata distribution plans. *See, e.g.,* 2:12-cv-00601, ECF No. 172; 2:12-cv-00101, ECF No. 572). This factor supports final approval.

### c.   There Are No Separate Agreements Relating to the Proposed Settlement

The Settlement Agreement reflects all the agreements and understandings relating to the proposed settlement, and there are no separate agreements that would affect the settlement amount, the eligibility of class members to participate in the settlement or exclude themselves from it, or the treatment of class member claims. This factor is therefore neutral.

### 3. The Settlement Treats Class Members Equitably Relative to Each Other.

Class members will be treated equitably relative to each other in terms of their eligibility for a *pro-rata* portion of the settlement funds and their right to opt-out of the TK Holdings Settlement Class. Likewise, each class member gives the same releases.

### 4. The Settlement is Consistent with the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.,* 962 F. 2d 1203, 1205 (6th Cir. 1992). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed settlement. *Griffin*, 2013 WL 6511860, at *5. This factor also supports final approval.

14

Consideration of the above factors supports final approval of the proposed settlement. Settlement Class Counsel respectfully submit that the proposed settlement is in the best interests of the Settlement Class and should be finally approved.

## IV.   NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS

Federal Rule of Civil Procedure 23 provides that, "upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) [ ] the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). *Accord In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (E.D. Pa. 2013). In addition, the "notice must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The notice program and forms of notice utilized Plaintiffs satisfy these requirements. The notices set forth all information required by Rule 23(c)(2)(B) and 23(e)(1) and apprise members of the TK Holdings Settlement Class that Settlement Class Counsel will propose a plan of distribution of the settlement proceeds.

15

Pursuant to the Notice Order, on June 20, 2022, 1,331 copies of the Notice were mailed, postage prepaid, to all potential TK Holdings Settlement Class members identified by Defendants as their direct customers of Occupant Safety Systems. The Summary Notice was published in *Automotive News* on June 27, 2022; and an Informational Press Release targeting automotive industry trade publications was issued nationwide via PR Newswire's "Auto Wire." Finally, a copy of the Notice was (and remains) posted online at www.autopartsantitrustlitigation.com.[7]

The content and method for dissemination of notice fulfill the requirements of Federal Rule of Civil Procedure 23 and due process.

## V.   THE PROPOSED PLAN FOR DISTRIBUTION OF THE SETTLEMENT FUND IS FAIR, REASONABLE, AND ADEQUATE AND MERITS APPROVAL

Approval of a settlement fund distribution in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan of distribution must be fair, reasonable, and adequate. *Packaged Ice*, 2011 WL 6209188, at *15. *Accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 326 (3d Cir. 2011); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 107 (E.D. Pa. 2013); *Law v. National Collegiate Athletic Ass'n.*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000). Generally, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. *Ikon Office Solutions,* 194 F.R.D. at 184; *MCI Telecoms Corp.*, 1993 WL 142006, at *2; 4 *Newberg*, § 12.35, at 350 (noting that *pro-rata* allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"). An allocation formula need only have a

---

[7] Consistent with Paragraph 10 of the Notice Order, a declaration or affidavit confirming that notice was disseminated to the TK Holdings Settlement Class in accordance with the Notice Order will be filed at least 10 days prior to the Fairness Hearing.

reasonable, rational basis, particularly if recommended by experienced and competent class counsel. As with other aspects of a settlement, the opinion of experienced and informed counsel is entitled to considerable weight. *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

The Notice sent to potential TK Holdings Settlement Class members on June 20, 2022 describes the plan recommended by Settlement Class Counsel for the distribution of the Settlement Fund to the TK Holdings Settlement Class members who file timely and proper claim forms. The proposed distribution plan provides for the TK Holdings Settlement Fund, with accrued interest, to be allocated among approved claimants according to the respective amount of their recognized transactions during the Class Period.

This Court has approved similar pro-rata distribution plans in the *Automotive Parts Antitrust Litigation*, as have numerous other courts in other matters. *See, e.g., In re Wire Harness Cases*, 2:12-cv-00101, ECF No. 572. *See also* 4 *Newberg*, § 12.35, at 353-54 (noting propriety of *pro-rata* distribution of settlement funds). "Settlement distributions, such as this one, that apportion funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable." *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1737867, at *6 (D. D.C. Mar. 31, 2000) (finding proposed plan for *pro-rata* distribution of partial settlement funds was fair, adequate, and reasonable). *Accord Prandin Direct Purchaser Antitrust Litig.*, C.A. No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *3 (E.D. Mich. Jan. 20, 2015) (approving a plan as fair, reasonable, and adequate that utilized a *pro-rata* method for

calculating each class member's share of the settlement fund). The proposed plan for allocation and distribution satisfies the above criteria and should receive final approval.[8]

## VI. CERTIFICATION OF THE TK HOLDINGS SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE

In preliminarily approving the settlement, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of the proposed settlement only, the following Settlement Class[9]:

> All direct purchasers of Occupant Safety Systems in the United States from one or more of the Defendants or their co-conspirators (or their controlled subsidiaries, affiliates or joint ventures) from January 1, 2003 through June 25, 2017.

ECF No. 182.

It is well established that a class may be certified for purposes of settlement. *See, e.g.,* *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 24; *Cardizem,* 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[10]

---

[8] TK Holdings Settlement Class members may share in the distribution of the Settlement Funds by relying upon a valid Claim Form submitted previously in connection with the prior settlements in this litigation, or by completing and timely submitting the Claim Form that was included with the Notice and available on the settlement website, postmarked on or before September 23, 2022. (Notice, Exhibit 1 at 3).

[9] For purposes of the Settlement Class definition, the following entities are Defendants: Autoliv Inc.; Autoliv SP Inc.; Autoliv BV & Co. KG; Autoliv Japan Ltd.; Takata Corp.; TK Holdings Inc.; Tokai Rika; TRAM Inc.; TRW Automotive Holdings Corp.; TRW Deutschland Holding GmbH; Toyoda Gosei Co Ltd.; Toyoda Gosei North America Corp.; and TG Missouri Corp.

[10] The Preliminary Approval Order provides that provisional certification of the Settlement Class will be without prejudice to the rights of any Defendant to contest certification of any other class proposed in these coordinated actions. (ECF No. 182). *See also Packaged Ice*, 2011 WL 717519, at *7.

18

As demonstrated below, the TK Holdings Settlement Class meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

### A.       The Proposed TK Holdings Settlement Class Satisfies Rule 23(a).

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

### 1.       The TK Holdings Settlement Class is Sufficiently Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason. *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity). Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, copies of the Notice were mailed to 1,331 entities, geographically dispersed throughout the United States, that were identified by Defendants as potential direct purchasers of Occupant Safety Systems. Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

## 2. There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class." "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 2015 WL 136238, at *13 (E.D. Mich. Jan 9, 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 *Newberg on Class Actions,* § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered illegal agreements to artificially fix prices of Occupant Safety Systems is a factual question common to all members of the Settlement Class because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 25. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on members of the Settlement Class. *Packaged Ice*, 2011 WL 717519, at *6 (commonality requirement satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity, focus on defendants' conduct, not the individual conduct of the putative class members."

*Flat Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3. Plaintiffs' Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Plaintiffs' claims arise from the same course of conduct as the claims of the other Settlement Class members: Defendants' alleged violations of the antitrust laws. Plaintiffs and the other members of the Settlement Class are proceeding on the same legal claim, alleged violations of Section 1 of the Sherman Act. *See UAW*, 497 F.3d at 625; *Barry v. Corrigan*, No. 13-cv-13185, 2015 WL 136238, at *13 (E.D. Mich. Jan. 9, 2015). Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining whether the representation of the class will be adequate: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Automotive Component Carrier LLC,* No. 09-14429, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 2, 2010) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

21

These requirements are met here. The interests of the proposed representatives of the Settlement Class – Plaintiffs Beam's Industries, Inc. and Findlay Industries, Inc. – are common to those of other Settlement Class members. Plaintiffs are direct purchasers of Occupant Safety Systems from a Defendant in the United States. Plaintiffs and the other Settlement Class members claim that they were injured because of the alleged conspiracy and seek to prove that Defendants violated the antitrust laws. Plaintiffs' interests are thus aligned with those of the Settlement Class.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.[11]  Settlement Class Counsel vigorously represented Plaintiffs and the Settlement Class in the settlement negotiations with the Settling Defendant and have vigorously prosecuted this action. Adequate representation under Rule 23(a)(4) is therefore satisfied.

## B.    Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.

In addition to satisfying Rule 23(a), Plaintiffs must show that the proposed class action falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

---

[11] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman & Kodroff, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* direct purchaser cases. They submit that, for the same reasons that the Court appointed them to that position, their appointment as Settlement Class Counsel is appropriate.

### 1.    Common Legal and Factual Questions Predominate.

Rule 23(b)(3)'s requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive" to warrant certification. *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *Scrap Metal*, 527 F.3d at 535; *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 27; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-cv-208, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation … will not vary among class members'…. Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied."  527 F.3d at 535 (emphasis in original).

In this case the same set of core operative facts and theory of liability apply to each member of the TK Holdings Settlement Class. As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Occupant Safety Systems is a question common to all members of the TK Holdings Settlement Class because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6. If Plaintiffs and the other members of the Settlement Class were to bring their own individual actions, they would each be required to prove

23

the same alleged wrongdoing by Defendants to establish liability. Therefore, common proof of Defendants' alleged violations of antitrust law will predominate.

### 2.     A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

All Occupant Safety Systems litigation is centralized in this Court. If a Settlement Class member wants to control its own litigation, it can request exclusion from the settlement class. Thus, consideration of factors (1) – (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case because the settlement will end the litigation without a trial. *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Class is not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own." *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)). Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the Settlement Class. *E.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this

24

action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury."). The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996). Thus, class litigation is superior to the alternatives in this case.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the TK Holdings settlement, certify the TK Holdings Settlement Class for purposes of the settlement only, and approve the proposed plan for distribution of the settlement funds.

DATED: July 18, 2022                                    Respectfully submitted,

                                                                 /s/David H. Fink
                                                                David H. Fink (P28235)
                                                                Nathan J. Fink (P75185)
                                                                FINK BRESSACK
                                                                38500 Woodward Ave; Suite 350
                                                                Bloomfield Hills, MI 48304
                                                                Telephone: (248) 971-2500

                                                                *Interim Liaison Counsel for the Direct*
                                                                *Purchaser Plaintiffs*

                                                                Joseph C. Kohn
Steven A. Kanner                                        William E. Hoese
William H. London                                      Douglas A. Abrahams
Michael E. Moskovitz                                  KOHN, SWIFT & GRAF, P.C.
FREED KANNER LONDON                        1600 Market Street, Suite 2500
   & MILLEN LLC                                        Philadelphia, PA  19103
2201 Waukegan Road, Suite 130               Telephone: (215) 238-1700
Bannockburn, IL  60015
Telephone: (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2022, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to all counsel

of record registered for electronic filing.

FINK BRESSACK

By: /s/Nathan J. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI  48304
Telephone: (248) 971-2500
nfink@finkbressack.com